UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

                                 Chapter   13

Joann Kolnberger,

                                 Case No. 18-75904-ast
            Debtor

----------------------------------------------------X
Joann Kolnberger,
            Plaintiff,

                                 Adv. Pro No.  19-8021
                                 Jury Trial Demanded
      -against-

Select Portfolio Servicing, Bank of America, N.A.,
Deutsche Bank National Trust Company,
as trustee, on behalf of the holders of the IMPAC
Secured Assets Corp., Mortgage Pass-Through
Certificates Series 2006-4,
                    Defendant.
----------------------------------------------------------X

## **COMPLAINT**

1.     Joann Kolnberger, (the "Plaintiff") herein, by and through her attorney, Charles Wallshein, Esq., respectfully submits this as and for her complaint (the "Complaint") against Select Portfolio Servicing, Bank of America, N.A and Deutsche Bank National Trust Company as trustee on behalf of the holders of the IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4 (the "Defendant") and states as follows:

## PRELIMINARY STATEMENT

2.   This adversary proceeding is a core proceeding and also relates to the underlying Chapter 13 bankruptcy case of Joann Kolnberger, which was filed in the Eastern District of New York on August 31, 2018 under case # 18-75904-ast (the "Chapter 13 Case"). This adversary proceeding is being filed to address Defendants' violations of 12 C.F.R. §1024.35, 12 C.F.R. §1024.36 and 12 C.F.R. §1024.41 as well as violations of state laws and rules.

3.   Defendants have violated federal law and repeatedly lied not only to the Debtor, but to the Supreme Court of New York, Nassau County, and the Bankruptcy Court for the Eastern District of New York, when it claimed that it had no choice but to deny Debtor's loan modification applications because "investor restrictions" prohibited such loan modifications.

4.   At all times up to and including the time investor denied Debtor's most recent loan modification application, investor did in fact modify loans pursuant to its own internal guidelines.

5.   Plaintiff's mortgage loan is federally related mortgage loan as defined by 12 U.S.C. § 2602 and 12 C.F.R. § 1024.5(a).

6.   A private right of action exists for the Plaintiff in this case to recover damages and other relief under Regulation X and RESPA pursuant to 12 U.S.C. §§2605(f).

7.   The loss mitigation provisions of Regulation X were implemented by the Consumer Financial Protection Bureau pursuant to a grant of congressional authority arising from the 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act.

8. In passing the Dodd/Frank Wall Street Reform and Consumer Protection Act, Congress recognized an important policy objective in avoiding preventable foreclosures on federally-related mortgage loans.

9. RESPA and Regulation X impose on mortgage servicers a duty of due care to the borrowers of federally-related mortgage loans.

10. Mortgage servicers "must maintain policies and procedures reasonably designed to meet the objectives identified in 12 C.F.R. §1024.38(b)."

11. Mortgage servicers must have "policies and procedures" that are "reasonably designed to ensure that the servicer can" perform the following tasks:

    a.   Provide accurate information regarding loss mitigation options available to the borrower 12 C.F.R. §1024.38(b)(2)(a).

    b.    Identify specifically all loss mitigation options available to a borrower 12 C.F.R. §1024.38(b)(2)(a).

    c.   "In response to a complete loss mitigation application, properly evaluate the borrower for all eligible loss mitigation options pursuant to any requirements established by the owner or assignee of the mortgage loan." 12 C.F.R. §1024.38((b)(2)(e).

12. Violations of 12 C.F.R. 1024.38 are not directly actionable by borrowers, but errors arising from the mortgage servicer's failure to institute appropriate policies are directly actionable pursuant to 12 C.F.R. §1024.35, 12 C.F.R. §1024.36 and 12 C.F.R. §1024.41.

13. Plaintiff seeks damages from Defendant to correct errors wherein Defendant were given lawful notice of said errors pursuant to 12 C.F.R. §1024.41(c)(1)(i) and under several state law causes of action.

14. Defendant and its servicing agent, Select Portfolio Servicing Inc., for this particular loan, has made misstatements of material fact concerning the

Debtor-Plaintiff's denial of her application for modification of her mortgage loan.

15. Defendant by and through its agents has made material misrepresentations of material fact constitute a violation of 12 U.S.C. §§2605(f), 12 C.F.R. §1024.35, and 12 C.F.R. §1024.41 and has failed to correct those errors when given notice thereof.

16. Plaintiff seeks to apply the statutory scheme to recover damages from Defendant for violations of 12 C.F.R. §1024.35, §1024.38 and §1024.41 for failing to properly review Plaintiffs for a loan modification.

17. Plaintiff also seeks damages from Defendant to correct errors wherein Defendants were given lawful notice of said errors pursuant to 12 C.F.R. §1024.41(c)(1)(i).

18. Plaintiff seeks damages from Defendant to correct errors wherein Defendant were given lawful notice of said errors pursuant to 12 C.F.R. §1024.41(g) for dual tracking the borrower's loan.

19. As of the date of this Complaint Defendant has moved to vacate the automatic stay to enforce the judgment of foreclosure and sale and proceed to auction.

20. The statutory scheme is designed to make the mortgage modification process transparent. The statutory scheme is designed to ensure that borrowers have a statutory right to determine and review all documents that concern the servicing of their mortgage loan. This includes the valuation of their homes, the instruments upon which the payment is based and calculated. It further includes the right to see a complete accounting for all monthly principal, interest, taxes and insurance paid on behalf of the borrowers.

21. Where borrowers seek mortgage assistance and permanent mortgage modification, the statutory scheme ensures that the applicants for permanent mortgage modification are made aware of all loss mitigation options available to them. If certain options are not available, the mortgage servicer must provide a reasonable explanation as to the basis therefore.

22. Where borrowers have applied for a mortgage modification and are denied, the statutory scheme provides for a written explanation for the denial and appeal process pursuant to 12 C.F.R. §1023.41(d) and 12 C.F.R. §1023.41(h).

23. Borrowers have the right to seek specific information concerning the mortgage servicing of their loan pursuant to 12 C.F.R. §1023.36.

24. SPS has not complied with the requests for information regarding the servicing of the loan.

25. Mrs. Kolnberger has availed herself of the statutory mechanism to notice the loan servicer of the error pursuant to 12 C.F.R. §1024.35.

26. Bank of America N.A. and Select Portfolio Servicing Inc., have failed to timely provide information pursuant to 12 C.F.R. §1024.36.

27. SPS has failed to correct its errors pursuant to 12 C.F.R. §1024.35.

28. Bank of America, Select Portfolio Servicing and Deutsche Bank as Trustee for the Trust have acted in a manner that is generally harmful to consumers in the State of New York by inflicting needless harm on consumers by subverting the consumer protections provided by the State of New York, Federal Law and applicable local rules in both State and Federal Courts applicable to this case. Further, the Defendants' conduct, set out herein, constitutes a scheme to subvert the lawful consumer protections provide by law generally to all consumers in the State of New York. This subversion of general consumer protections affects consumers in the State of New

York generally and has resulted in unnecessary foreclosures, and resulting needless harm inflicted on numerous consumers within the State of New York and Mrs. Kolnberger in particular by denying consumers permanent, affordable loan modifications.

29. Mrs. Kolnberger has been damaged by the Defendants' collective conduct and seeks actual, statutory and punitive damages as allowed by the law as a jury deems reasonable and may award.

## THE PARTIES

30. The Plaintiff is Joann Kolnberger. Mrs. Kolnberger is the Debtor in the above numbered Chapter 13 Case. She resides at 106 Parkhill Avenue, Massapequa NY 11758 (the "Primary Residence").

31. The Defendant, *Deutsche Bank National Trust Company, as Trustee, on behalf of the holders of the IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4,* (hereinafter "Defendant-Trust") is the alleged holder of the note and the mortgage of record for the Primary Residence.

32. The Defendant-Trust is a common law trust formed and existing under the laws of the State of New York who is subject to suit by and through its trustee Deutsche Bank.

33. The Defendant-Trust contracts with a mortgage servicer to act as its agent and to service the mortgage loans which form the corpus of the trust for the benefit of the investors in the trust.

34. At all times hereinafter mentioned, Bank of America N.A. acted as *either* the Master Servicer for the Defendant-Trust or as the actual loan servicer for the Defendant-Trust.

6

35. Bank of America, N.A. is a national bank whose principal executive offices are located at 100 North Tryon Street, Charlotte, NC 28255. Bank of America, N.A. will be referred to as "B of A" hereinafter.

36. At all times material to this action, Select Portfolio Servicing has acted as *either* the loan servicer for the Defendant-Trust or as the sub-servicer for the Master Servicer B of A. Select Portfolio Servicing will be referred to as SPS hereinafter.

37. All of the actions of SPS relevant to this action were undertaken pursuant to a contractual agreement designating SPS as the agent and / or sub-agent of the Defendant-Trust and / or B of A.

38. Defendants filed Proof of Claim # 11 in the Chapter 13 Case on August 2, 2018 (the "Filing Date".)

39. The Defendants have consented to the jurisdiction of the Bankruptcy Court by participating in the Bankruptcy case.

40. The claim (attached hereto as **Exhibit "A"**) alleges a debt secured by the Primary Residence of $570,659.64, with arrears in the amount of $166,645.82.

## **JURISDICTION AND VENUE**

41. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334. The Court may exercise pendent jurisdiction over the state law claims of the Debtor.

42. This adversary proceeding is related to the Chapter 13 Case which is pending in the Bankruptcy Court for the Eastern District of New York and is either a "core proceeding" as that term is defined in 28 U.S.C. § 157(a), (b)(1),

(b)(2)(A), (b)(2)(k), or related to the case as defined and allowed in §157(c)(1).

43. Plaintiff submits that the claims set out herein constitute core claims pursuant to 28 U.S.C. §157(b)(2)(A), (G), (K) & (L). However, because the Plaintiff seeks a jury trial on the underlying claims, it would be proper to withdraw the Bankruptcy reference for the purposes of trying these claims to a jury.

44. Plaintiffs will be moving separately to withdraw the reference in this matter once the Defendants have been served and appear in the case.

45. The United States Bankruptcy Court for the Eastern District of New York is the proper venue for this proceeding in accordance with 28 U.S.C. §§ 1408 and 1409(a). Therefore, venue would be proper in this matter in either the Bankruptcy Court or the District Court for the Eastern District of New York if the reference is withdrawn by the District Court.

## I. STATEMENT OF FACTS

46. In late 2014, Michael Kolnberger, husband of the Defendant and the primary income source in the Kolnberger household, became gravely ill. His income was lost to the family while he battled this illness, and the family soon fell into financial difficulties and defaulted on the mortgage for their residence located at 106 Park Hill Avenue, Massapequa NY 11758 ("Subject Property").

47. At the time of default, upon information and belief, B of A was the mortgage servicer for the Defendant-Trust.

48. On or about August 17, 2015, the Plaintiff filed a foreclosure summons and complaint in Supreme Court, Nassau County, index number 007128/2015 was assigned. From approximately November 2015 to April 2016, Mr. and

Mrs. Kolnberger attended settlement conferences, representing themselves *pro se* and without an attorney present. During the course of these hearings, Mr. Kolnberger passed away from his illness.

## A.    First Loss Mitigation Application, 2016

49.    In or around April 2016, Joann Kolnberger submitted a request for mortgage assistance, seeking a modification of her mortgage then owned and serviced by Bank of America.

50.    On or about October 14, 2016, Bank of America notified Plaintiff that her application for loss mitigation was denied. See **Exhibit "B"** annexed hereto identified and hereinafter referred to as **"Denial 1."**

51.    Upon information and belief, on or about November 16, 2016, the loan was service-transferred to SPS.

52.    On or about December 9, 2016, Plaintiff by and through counsel forwarded an updated loan modification package to SPS.

53.    On December 20, 2016, Plaintiff received a letter from the law firm representing SPS (attached hereto as **Exhibit "C"**) stating that the foreclosure action was put on hold while her loss mitigation application was being reviewed.

54.    On or about March 31, 2017, Plaintiff received a letter from SPS informing her that her application for loss mitigation was reviewed for a repayment plan and not for a modification. The letter also contained a denial for all other loss mitigation home retention options including HAMP. This denial letter is attached hereto as **Exhibit "D,"** this letter will be referred to hereinafter as the First Denial Letter.

55. The First Denial Letter contains a denial of a HAMP Tier 1 Trial Modification, and a HAMP Tier 2 Trial Modification for the reason of "Investor/Guarantor Not Participating."

56. The explanation continues, "We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has the right of approval and has denied this option based on a business decision."

57. The First Denial Letter also contained a denial for a SPS Trial Modification, for essentially the same reason: "We service your mortgage on behalf of an investor or group of investors that has not given us the contractual authority to modify your mortgage."

58. On March 31, 2017, Plaintiff received another, second letter from SPS approving her for a repayment plan. Said letter is annexed hereto as **Exhibit "E".**

59. The March 31, 2017 letter from SPS offered a repayment plan alternative to a modification. The home retention repayment plan required 12 monthly payments of $4,304.94 commencing on April 24, 2017 and then a lump sum balloon payment of $99,380.78 due on April 24, 2018.

60. On April 17, 2017 Debtor's counsel, Philip Mahoney, forwarded an appeal to the Servicer. Said letter is annexed hereto as **Exhibit "F".**

61. The First Appeal Letter appealed the denial on the following four grounds:

   a. ***First grounds for appeal***. The denial was appealed on the grounds that the loan had not yet been considered for relief under the consumer relief provisions of the January 17, 2017 settlement between the United States Department of Justice and Deutsche Bank AG, under which Deutsche Bank has been ordered to provide $4.1 billion for

consumer relief including principal forgiveness and loan modifications for financially distressed homeowners.

b.   In 2013, the Department of Justice sued Deutsche Bank for allegedly misleading investors in the packaging, securitization, marketing, sale and issuance of residential mortgage-backed securities between 2006 and 2007. The $4.1 billion consumer relief fund is part of the settlement of that lawsuit. The First Appeal Letter asked that the Plaintiff be considered for assistance under the settlement.

c.   ***Second grounds for appeal***. The loan modification application was improperly denied because a HAMP Tier 1 Trial Modification, a HAMP Tier 2 Trial Modification and an SPS Trial Modification were all denied for reason of investor restrictions. This is a violation of both (a) RESPA Regulations, which require that when a loan modification application is denied because of investor restrictions, specific criteria for denial must be given; and (b) New York State case law, which further requires that reasonable efforts must be made to obtain a waiver from those investor restrictions and that evidence of those investor restrictions be provided to the borrower.

d.   Section 12 CFR 1024.41(d) of the Real Estate Settlement Procedures Act (Regulation X) states:

   i.   If the servicer denies a loss mitigation application for any trial or permanent loan modification option, the notice provided to the borrower must also state the servicer's specific reason or reasons for denying each trial or permanent loan modification option, and, if applicable, that the borrower was not evaluated on other criteria. Certain disclosures are required when a

servicer denies an application for the following reasons or using the following procedures:

1. Investor criteria and use of a waterfall and

2. If the servicer denies a loan modification option based upon investor criteria, the servicer must identify the owner or assignee of the mortgage loan and the specific criteria that the borrower failed to satisfy.

e. ***Third grounds for appeal***. Plaintiff should have been granted a HAMP loan modification, per the analysis conducted on pages 5-9 of the First Denial Letter, because the HAMP analysis of the loan was already in progress when the loan was service-transferred from Bank of America (a HAMP participant) to the Servicer, and per the *Making Homes Affordable "MHA" Handbook* authorities cited below, it was therefore incumbent on the new Servicer (SPS) to continue the HAMP analysis, and it was also incumbent upon SPS to continue that analysis past the MHA program's termination date of December 30, 2016.

f. On November 16, 2016, Plaintiff's loan was service-transferred from Bank of America, a HAMP participant, to the SPS, also a HAMP participant. At the time of the transfer, an active HAMP analysis was ongoing.

g. Per MHA regulations, it was incumbent on the Servicer to continue the HAMP analysis begun by Bank of America. Section 1.4.1 of the Making Home Affordable handbook, Version 5.1, dated May 26, 2016 (the "MHA Handbook") ("Transfers of Servicing / Transfer of Eligible Loans") states as follows:

"When a participating servicer transfers or assigns mortgage loans, or servicing rights relating to mortgage loans, that constitute Eligible Loans pursuant to the SPA, the transferee servicer must assume the transferor's obligations under the SPA with respect to the transferred Eligible Loans. A transferring servicer may not use a transfer to circumvent its existing obligations under the SPA.[1]"

h. Furthermore, the HAMP analysis should have continued even though the HAMP program terminated six weeks after the loan was transferred to the Servicer. Making Home Affordable Supplemental Directive 16-02, "Making Home Affordable Program – MHA Program Termination and Borrower Application Sunset" states that "a borrower who submits an Initial Package[2] on or before [the MHA program termination date of] December 30, 2016 must be evaluated for HAMP, provided that such borrower meets all applicable eligibility criteria set forth in Section 1 of Chapter II."

i. Plaintiff met both requirements of Supplemental Directive 16-02. First, she submitted an Initial Package to Bank of America, the original servicer and a HAMP participant, in August of 2016. The HAMP analysis was still underway when the loan was service transferred to SPS on November 16, 2016. Second, her loan meets all

---

[1] "SPA" is defined as the Servicer Participation Agreement that participating servicers had to register with the MHA program administrator. Loans that constitute "Eligible Loans" are as defined in that SPA.

[2] "Initial Package" is defined in Chapter 2, Section 4 of the MHA Handbook as (i) the RMA form, (ii) form 4506-T, (iii) evidence of income and (iv) Dodd Frank Certification.

the applicable eligibility criteria set forth in Section 1 of Chapter II of the MHA Handbook in that: (i) her loan is a first lien mortgage loan originated on or before January 1, 2009; (ii) her property had not been condemned; (iii) she has documented a financial hardship; (iv) she has agreed to set up an account for taxes and hazard and flood insurance; (v) the unpaid principal balance for her single family house is less than $729,750; (vi) the mortgage loan is secured by a one-family property and (vii) she submitted an Initial Package on or before December 30, 2016.

j.   ***Fourth grounds for appeal***. Plaintiff should have been granted a HAMP loan modification, per the analysis conducted on pages 5-9 of the First Denial Letter, because a loan modification analysis under both HAMP and SPS's programs had been promised during the application process, and further because the B of A and SPS's conduct in repeatedly requiring updated documents indicated that such an analysis was being conducted.

## B.   The Second Denial Letter And The Second Appeal Letter

62.   On or about May 12, 2017, a second denial letter was received. (This letter, the "Second Denial Letter," is attached hereto as **Exhibit "G"**.) The Second Denial Letter did not address the four grounds for appeal provided in the First Appeal Letter and as outlined above.

63.   The Second Denial Letter only stated, without further elaboration, that "In response to your appeal of the decision notice dated March 31, 2017, SPS complies with all relevant state and federal requirements in connection with the servicing of your client's lien. SPS respectfully disagrees with your

suggestion that SPS has violated applicable law in regard to reviewing your client's account for loss mitigation."

64. On or about May 23, 2017, a letter was received from SPS which detailed other options, besides loan modification, that might be available to the Defendant. (This letter, the "Option Letter," is attached hereto as **Exhibit "H"**.)

65. In response to the Second Denial Letter, Plaintiff's counsel, Phillip Mahoney, sent a second appeal letter to the Plaintiff on or about June 10, 2017. (This letter, the "Second Appeal Letter," is attached hereto as **Exhibit "I"**.)

66. SPS responded to Plaintiff's appeal by letter that identified as one possible option a payment deferral which it described as follows: "With this program, your account will become contractually current by adding the past due payments to the end of your loan."

67. Plaintiff's Second Appeal letter repeated the four grounds for appeal that were presented in the First Appeal Letter, as those four grounds had as yet gone unaddressed, and also asked that SPS consider Ms. Kolnberger for the payment deferral option.

68. SPS did not respond to Mrs. Kolnberger's Second Appeal Letter.

69. SPS did not provide any response to Mrs. Kolnberger's demand for an explanation of the denial of loss mitigation and did not explain why Mrs. Kolnberger was not considered for the deferral option.

**C.    Plaintiff's Third Request For Loan Modification**

70. On November 8, 2018 Plaintiff by and through Counsel made her third application to SPS. Please See **Exhibit "J"** annexed hereto.

71. On or about November 13, 2018, Plaintiff received a denial letter from SPS stating that she was "not eligible for one or more options requested in the RMA". Please See **Exhibit "K"** annexed hereto.

72. On or about December 3, 2018, Plaintiff by and through counsel appealed the November 13, 2018 denial by mailing to SPS an appeal letter. See **Exhibit "L"** annexed hereto.

73. On or about December 27, 2018, SPS denied Plaintiff's appeal on the basis that the investor has restrictions against modifications. See **Exhibit "M"** annexed hereto.

74. On or about December 21, 2018, Plaintiff mailed to SPS a Notice of Error pursuant to the applicable portions of the RESPA and Reg. X. Please See **Exhibit "N"** annexed hereto.

75. SPS did not correct the violations set forth therein. SPS also did not provide an adequate response to the NOE as required by the applicable regulations.

76. SPS's repeated violations of 12 C.F.R. §1024.36, 12 C.F.R. §1024.41(d) and 12 C.F.R. §1024.41(h) within the instant matter and concerning other persons similarly situated with Plaintiff, constitute a "pattern and practice" of violations of RESPA.

77. Furthermore, SPS, Bank of America and the Defendant-Trust have intentionally misrepresented to Mrs. Kolnberger that the Defendant-Trust did not allow modifications of mortgages.

78. In fact, the Defendant-Trust has modified 263 mortgages since March of 2017.

79. SPS, B of A and the Defendant-Trust have intentionally suppressed the true facts with respect to the ability of the Defendants to modify mortgages by failing to inform Mrs. Kolnberger that the Defendant-Trust did have the

ability to modify mortgage loans and that the Defendant-Trust regularly modified mortgage loans.

80. SPS, B of A and the Defendant-Trust have used multiple variations of the fraudulent statement that the "investor did not allow mortgage modifications" as a basis for subverting the protections offered consumers in the State of New York such as Kolnberger.

81. The conduct of SPS, B of A and the Defendant-Trust generally impacts consumers in the State of New York by inflicting needless harm on the consuming public in the State of New York by denying mortgage assistance to consumers who otherwise qualify for mortgage assistance.

82. SPS, B of A and the Defendant-Trust intentionally subverted the protections offered under the HAMP program imposed upon the Defendants through the SPA's by improperly handling the transfer of servicing between B of A and SPS and by failing and refusing to consider Kolnberger for a modification under the HAMP program.

83. This conduct by SPS, B of A and the Defendant-Trust generally impacts consumers in the State of New York by needlessly harming consumers by denying them mortgage assistance under the HAMP program.

84. SPS and B of A were contractually obligated to provide said mortgage assistance in consideration of the billions of dollars in Federal Government assistance paid to mortgage servicers in exchange for their participation in the HAMP program.

85. The collective conduct of SPS, B of A and the Defendant-Trust in making misrepresentations of material facts, suppressing the true facts, subverting the State and Federal consumer protections offered to the consuming public, constitutes a scheme designed to subvert the consumer protections provided to the consuming public both in New York and nationally. This conduct

generally impacts consumers in New York by thwarting and subverting the consumer protections offered to consumers in New York under both State and Federal Law.

86. At all times material to every act in this case, SPS was the agent of both B of A and the Defendant-Trust.

87. Every act taken only by SPS was *either* specifically authorized within the scope of SPS's agency or ratified by B of A and the Defendant-Trust such that all of the acts of SPS in this case are the acts of B of A and the Defendant-Trust.

88. The purpose of the collective conduct of the Defendants was to deny consumers generally mortgage assistance during a time of financial difficulty.

89. The effect of the collective conduct of the Defendants was to needlessly harm those consumers who sought mortgage assistance from the Defendants including Mrs. Kolnberger specifically.

90. The conduct of the Defendants is intentional, willful and the conduct is undertaken by the Defendants with full knowledge that financially vulnerable consumers will be harmed by the Defendants' collective conduct at a financially vulnerable point in time.

91. Mrs. Kolnberger seeks all damages allowable under the law for the conduct of the Defendants whether under a direct liability theory or a respondeat superior theory.

92. Mrs. Kolnberger seeks compensatory damages and statutory damages under her RESPA claims.

93. Mrs. Kolnberger seeks compensatory and punitive damages for her fraud and GBL §349(a) claim.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41(d)

94.  Plaintiff repeats, realleges and reiterates all allegations contained in all prior paragraphs of the complaint as if fully set forth herein.

95.  The First Denial Letter stated that Ms. Kolnberger's loan could not be considered for a HAMP Tier 1, HAMP Tier 2 and SPS Trial Modification because the investor did not participate in those programs.

96.  Both Bank of America and SPS made materially false statements of fact as to the reasons for denial of the modification applications.

97.  At all times material to this action the Defendant-Trust did in fact modify loans pursuant to HAMP guidelines.

98.  At all times material to this action the Defendant-Trust did in fact modify loans pursuant to its own internal modification plans pursuant to its own proprietary guidelines.

99.  At all times material to this action the Defendant-Trust does in fact modify loans pursuant to its own internal modification plans pursuant to its own proprietary guidelines.

100. At all times material to this action the Defendant-Trust makes exceptions to its guidelines and does in fact modify the repayment terms of said loans outside of its written guidelines.

101. The reasons provided to Plaintiff for denial of her loan modification applications contained in the first and second denial letters by SPS are false and SPS knew they were false when made.

102. Defendant SPS made material misrepresentations of material fact in the denials and responses to appeals provided to Kolnberger.

103. Defendants' repeated misstatements concerning the reasons for denial of its loan modification, and the appeals taken therefrom, constitute violations of 12 C.F.R. §1024.41(d) and 12 C.F.R. §1024.41(h).

104. Kolnberger has suffered actual damages in the form of economic damages resulting from SPS's false statements in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

105. Kolnberger has suffered actual damages in the form of noneconomic damages resulting from SPS's false statements in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against SPS for all lawful damages in an amount the jury deems reasonable and may award.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41(d)

106.  Plaintiff realleges all prior paragraphs of this complaint as if fully set forth herein.

107.  SPS's use of a false pretext is a violation of 12 C.F.R. §1024.41(d).

108.  SPS has used materially false pretexts to deny Mrs. Kolnberger's applications for loss mitigation on at least three separate occasions concerning three separate mortgage modification applications.

109. Kolnberger has suffered actual damages in the form of economic damages resulting from SPS's actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

110. Kolnberger has suffered actual damages in the form of noneconomic damages resulting from SPS's actions in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against SPS for all lawful damages in an amount the jury deems reasonable and may award.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41

111. Plaintiff realleges all prior paragraphs as if fully set forth herein.

112. SPS has used materially false pretexts for denial of loan modification applications on three separate occasions concerning three separate appeals of denial.

113. SPS's repeated violations of 12 C.F.R. §1024.41(d) and 12 C.F.R. §1024.41(h) within the instant matter and in other matters concerning other persons similarly situated with Plaintiff, constitute a "pattern and practice" of violations of RESPA.

114. Kolnberger has suffered actual damages in the form of economic damages resulting from SPS's actions in the form of attorney's fees, accrued

mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

115.    Kolnberger has suffered actual damages in the form of noneconomic damages resulting from SPS's actions in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against SPS for all lawful damages in an amount the jury deems reasonable and may award.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.36

116.    Plaintiff realleges all prior paragraphs as if fully set forth herein.

117.    Mrs. Kolnberger gave notice to SPS by Notice of Error dated December 21, 2018.

118.    SPS acknowledged receipt of the Notice of Error by letter to Plaintiff and her counsel dated January 3, 2019.

119.    As of the date of the filing of this adversary complaint SPS has not responded to Plaintiff's Notice of Error.

120.    SPS's failure to respond to a Notice of Error is a violation of 12 C.F.R. §1024.35.

121.    Kolnberger has suffered actual damages in the form of economic damages resulting from SPS's actions in the form of attorney's fees, accrued

mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

122. Kolnberger has suffered actual damages in the form of noneconomic damages resulting from SPS's actions in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against SPS for all lawful damages in an amount the jury deems reasonable and may award.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF 12 C.F.R. §1024.41(g)

123.  Plaintiff realleges all prior paragraphs as if fully set forth herein.

124. As of the date of this complaint, SPS has moved for relief from the automatic stay so that it may sell Plaintiff's residence at auction.

125. In doing so SPS has violated 12 C.F.R. §1024.41(g).

126. SPS has engaged in bad faith by making continued material misstatements of fact to the borrower, to the State Court and to the Bankruptcy Court concerning its basis for denying loss mitigation options to Mrs. Kolnberger.

127. Pursuant to equitable principles of estoppel, SPS is prevented, disqualified and disallowed from availing itself of the exceptions set forth in of 12 C.F.R. §1024.41(g)(1), (g)(2), and (g)(3).

128.  SPS, on the basis of its continued falsehoods and misconduct, now seeks to complete its wrongdoing by selling Mrs. Kolnberger's home in violation of law.

129.  SPS's conduct is intentional and is calculated to subvert the legal protections afforded to Mrs. Kolnberger.

130.  Kolnberger seeks an order from this Court barring SPS from availing itself of the exceptions set out in 12 C.F.R. §1024.41(g)(1), (g)(2), and (g)(3).

131.  As a result of SPS's conduct, Mrs. Kolnberger has been injured and damaged.

132.  Kolnberger has suffered actual damages in the form of economic damages resulting from SPS's actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

133.  Kolnberger has suffered actual damages in the form of noneconomic damages resulting from SPS's actions in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against SPS for all lawful damages in an amount the jury deems reasonable and may award.

## SIXTH CLAIM FOR RELIEF
## FRAUD

134.  Plaintiff realleges all prior paragraphs as if fully set forth herein.

135. In a letter dated October 14, 2016, B of A represented to Mrs. Kolnberger, in writing, that the mortgage owner or investor did not allow mortgage modifications.

136. This statement by B of A was false and B of A knew it was false when made.

137. B of A made the statement for the purpose of deceiving Kolnberger about the availability of loss mitigation through a mortgage modification.

138. B of A failed to disclose that the Defendant-Trust was actively modifying mortgages at the time that B of A made the false statement to Kolnberger.

139. At all times material to this complaint, B of A was the agent of the Defendant-Trust and the Defendant-Trust ratified and approved of B of A's fraudulent statements.

140. In letters dated March 31, 2017, May 12, 2017, and November 13, 2018, SPS falsely represented to Mrs. Kolnberger, that the mortgage owner or investor did not allow mortgage modifications.

141. This statement by SPS was false when made and SPS knew it was false when made.

142. SPS made the statement for the purpose of deceiving Kolnberger about the availability of loss mitigation through a mortgage modification.

143. SPS failed to disclose that the Defendant-Trust was actively modifying mortgages at each time that SPS made the false statement to Kolnberger.

144. At all times material to this complaint, SPS was the agent of the Defendant-Trust and B of A as the sub-servicer of Kolnberger's mortgage loan account.

145. B of A and the Defendant-Trust ratified and approved SPS's fraudulent statements to Kolnberger.

146. At all times material to this complaint, the Defendants B of A and SPS omitted or suppressed the fact that the Defendant-Trust routinely made mortgage modifications.

147. Both SPS and B of A knew that their omissions of the material fact that the Defendant-Trust was routinely modifying mortgages rendered their statements to Mrs. Kolnberger false when made.

148. Both SPS and B of A made these false statements and omitted these material facts for the purpose of inducing Mrs. Kolnberger to accept these statements as true and cease and desist in her efforts to obtain an affordable mortgage modification.

149. Mrs. Kolnberger was justified in relying on the misrepresentations and omissions of SPS and B of A because she had no available means to determine the falsity of these statements.

150. As a result of the Defendants' fraud, Mrs. Kolnberger was injured and damaged.

151. Mrs. Kolnberger has suffered actual damages in the form of economic damages resulting from the Defendants' collective actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

152. Mrs. Kolnberger has suffered actual damages in the form of noneconomic damages resulting from the Defendants' collective actions in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against the Defendants for all lawful damages in an amount the jury deems reasonable and may award including, specifically, punitive damages.

## SEVENTH CLAIM FOR RELIEF
## VIOLATION OF GBL 349(a)

153.   Plaintiff realleges all prior paragraphs as if fully set forth herein.

154.   At all times material to this case the Defendants have acted in concert together in a manner inconsistent with New York State Law governing the good faith conduct required of lenders concerning good faith review for all mortgage modification applications.

155.   The Defendants' collective conduct violates and subverts the protections provided to consumers in foreclosure by CPLR §3408 which provides a private right of action for such wrongs. CPLR §§3408(f), (i) and (j) create a private right of action against Plaintiffs and its respective representative(s).

156.   The Defendants' collective conduct further subverts the protections afforded generally to homeowners in New York by failing to adequately protect consumer's rights to consideration for mortgage assistance under HAMP when mortgage servicing rights were transferred between B of A and SPS. This conduct also violates legal obligations imposed upon B of A under its consent decree resolving claims related to its mortgage servicing practices, guidelines set out for mortgage servicing by the CFPB and obligations imposed upon B of A through its agreement with the Department of the Treasury to participate in HAMP.

157.    The Defendants' collective conduct violates and subverts the protections provided to consumers generally and Mrs. Kolnberger specifically by subverting, avoiding and denying consumers generally and Mrs. Kolnberger specifically, the rights and protections set out in the applicable sections of RESPA and Regulation X by failing to consider Mrs. Kolnberger for appropriate loss mitigation, failing to respond to her requests for information, notices of error and notices of appeal with respect to her mortgage loan account and her applications for loss mitigation assistance.

158.    The Defendants' collective conduct violates and subverts the protections provided to consumers generally and Mrs. Kolnberger specifically by engaging in active deception and fraud with respect to the availability of mortgage modification relief to Mrs. Kolnberger.

159.    The Defendants' collectively made intentional misrepresentations of fact to Mrs. Kolnberger regarding the ability to modify her mortgage loan.

160.    The Defendants' collectively made intentional misrepresentations of fact to Mrs. Kolnberger that her mortgage investor did not allow loan modifications.

161.    The Defendants' collectively suppressed the true facts regarding the availability of homeowner assistance through a mortgage modification.

162.    The effect of these misrepresentations and the suppression of the true facts were to deny Mrs. Kolnberger protections afforded to her under New York and Federal Law for the collective benefit of the Defendants.

163.    This conduct was not limited to Mrs. Kolnberger only but was directed at the consumers generally by the Defendants.

164.    These acts and practices of the Defendants are unfair and deceptive under GBL §349.

165. The Defendants' acts or practices are unfair, deceptive and misleading in a material way.

166. Mrs. Kolnberger has been injured and damaged as a result of the collective misconduct of the Defendants as alleged herein.

167. Mrs. Kolnberger has suffered actual damages in the form of economic damages resulting from the Defendants' actions in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

168. Mrs. Kolnberger has suffered actual damages in the form of noneconomic damages resulting from the Defendants' actions in the form of mental anguish, a category of damages within which Kolnberger includes stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of SPS's conduct on Kolnberger's normal life.

WHEREFORE, premises considered, Kolnberger demands judgment against the Defendants for all lawful damages in an amount the jury deems reasonable and may award including, specifically, an award of punitive damages.

## **Demand for Trial by Jury**

Mrs. Kolnberger, through counsel, hereby demands a trial by jury on all issues and causes of action arising in this complaint.

Respectfully submitted,

__/S/_ Charles Wallshein
Charles Wallshein Esq.

Attorney for Plaintiffs
35 Pinelawn Road
Suite 106E
Melville, NY 11747
631 824-6555
cwallshein@wallsheinlegal.com