# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

_____

Deutsche Bank National Trust Company                          Index No. 15-007128
As Trustee under The Pooling and Servicing Agreement
Relating to IMPAC Secured Assets Corp,. Mortgage
Pass-Through Certificates, Series 2006-4

                              Plaintiff


                        -against-


Joann Kolnberger a/k/a Joann Marie Kolnberger; Mortgage
Electronic Registration Systems, Inc., as nominee for First
Financial Equities, Inc.; "John Doe"

                        Defendant
_____


### Response in Opposition to Motion and
### Request that Sanctions be Imposed for Failure to Negotiate in Good Faith

Defendant JOAN KOLNBERGER, by and through her attorney Phillip Mahony

Esq., respectfully requests that the Plaintiff's Motion for Order Restoring the Matter to

the Court's Active Calendar and Judgment of Foreclosure and Sale (the "Motion") be

denied.

### Overview

The part of the Motion that seeks to Restore the Matter to the Court's Active

Calendar should be denied because (i) as of this date the loan modification process and

negotiations have not concluded and are still ongoing, as the Plaintiff has not yet

responded to Defendant's appeal of its loan modification denial, an appeal that was

invited by the Plaintiff; (ii) as of this date there remain several unanswered questions as

to why certain loan modification options have not been made available to the Defendant,

questions which have been raised repeatedly with no response from the Plaintiff and which are included in Defendant's pending appeal; and (iii) the Plaintiff has not participated in the settlement process in good faith in that, *inter alia*, the Plaintiff has wasted judicial resources and acted in a harmful and deleterious manner by not responding to Defendant's appeal letter and by filing this unwarranted Motion when the loss mitigation process has not been concluded, and in that the Plaintiff has violated RESPA and New York State law by not providing specific information about the investor guidelines it earlier claimed govern modifications of Ms. Kolnberger's loan.

The part of the Motion that comprises an application by the Plaintiff for a Judgment of Foreclosure and Sale should be denied because, again, the loss mitigation process has not been completed or concluded. The Plaintiff moves that the Court rule that "good cause be found for the delay" in re-filing the application, but the delay was actually caused by ongoing bad faith negotiations and willful dilatory tactics on the part of the Plaintiff in the loss mitigation process.

## Motion to Restore Matter to Court's Active Calendar

### 1. Statutory Background

1. Under New York Civil Practice Law and Procedures ("CPLR") and Uniform Rules for New York State Courts ("NYCRR"), parties to a residential foreclosure action in New York State are required to participate in settlement conferences for the purpose of exploring the possibility of modifying the terms of the Defendant's mortgage to enable the Defendant to avoid the loss of their home. CPLR § R3408(a) states in part:

"a mandatory conference... for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate."

2.      CPLR § R3408(f) requires that both parties to the Settlement Conferences "shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible."

3.      22 NYCRR § 202.12-a (4) states that in regards to the Settlement Conferences, the court "shall ensure that each party fulfills its obligation to negotiate in good faith and shall see that conferences not be unduly delayed or subject to willful dilatory tactics so that the rights of both parties may be adjudicated in a timely manner."

4.      There is no statutory definition of "good faith" as it relates to the settlement conferences and no published decision appears to specifically define it as that term is employed in C.P.L.R. 3408(f). *US Bank N.A. v. Sarmiento*, 991 N.Y.S.2d 68, 77-78. Generally, courts have applied a "totality of circumstances" test in determining whether a party has acted in bad faith. See *Aurora Loan Servs., LLC v Diakite*, 48 N.Y.S.3d 490, 492 (finding that "the totality of circumstances" should be considered when deciding whether a party acted in good faith under C.P.L.R. 3408(f), including whether the creditor had engaged in "dilatory conduct by...providing contradictory information"), *Wells Fargo Bank, N.A. v Van Dyke*, 958 N.Y.S.2d 331 (finding that good faith is not establishing "merely by proving the absence of fraud or malice" but instead "any determination of good faith [as it related to C.P.L.R. 3408(f)] must be based on the totality of circumstances"), and *US Bank N.A. v. Sarmiento*, 991 N.Y.S.2d 68, 79 ("(T)he

issue of whether a party failed to negotiate in 'good faith' within the meaning of C.P.L.R. 3408(f) should be determined by considering whether the totality of the circumstances demonstrates that the party's conduct did not constitute a meaningful effort at reaching a resolution.")

5.      Courts have consistently found that certain acts on the part of the Plaintiff lend themselves towards a finding of that the Plaintiff has acted in bad faith. A recurring common denominator in "totality of the circumstances" bad faith findings is dilatory or delaying tactics on the part of the Plaintiff. In *HSBC Bank, USA v. Gashi*, 971 N.Y.S.2d 71, the court found that the Plaintiff acted in bad faith because its "unnecessary and dilatory tactics have had the inexorable effect of plunging this homeowner deeper and deeper into arrears, raising the very real probability that he will never be able to extricate himself from his debt and work out an affordable loan modification." Like Ms. Kolnberger in the instant case, the Gashi court stated that the Defendant "appeared at every conference and has provided every document plaintiff requested in a timely manner" but the Plaintiff's actions nevertheless "only serve[d] to unnecessarily delay the modification application process while racking up interest, fees, and penalties to plaintiff's benefit and homeowner's detriment."

6.      Two findings of bad faith mirror the bad acts found in the case at hand. The *Sarmiento* court found that lack of good faith within the meaning of C.P.L.R. 3408(f) could be found "where a plaintiff... *denied requests for HAMP loan modifications without setting forth grounds*." *Sarmiento* at 78 (emphasis added). Another court found that bad faith existed in settlement conference negotiations where the Plaintiff "prolonged the workout process and wasted judicial resources by causing (the Defendant) to submit

multiple HAMP applications and to attend numerous settlement conferences *even though they knew the PSA prohibited U.S. Bank from modifying the applicable interest rate or term.*" *U.S. Bank N.A. v. Williams*, 995 N.Y.S.2d 172, 175 (emphasis added).

## 2. Factual and Procedural Background

7.  In late 2014, Michael Kolnberger, husband of the Defendant and the primary breadwinner in the Kolnberger household, became gravely ill. His income was lost to the family while he battled this illness, and the family soon fell into financial difficulties and defaulted on the mortgage for their residence located at 106 Park Hill Avenue, Massapequa NY 11758. The mortgage was held at that time by Bank of America, as servicer for Deutsche Bank National Trust Company, as Trustee under The Pooling and Servicing Agreement Relating to IMPAC Secured Assets Corp. Mortgage Pass-Through Certificates, Series 2006-4.

8.  On or about August 17, 2015, the Plaintiff filed a foreclosure summons and complaint with this Court, and index number 007128/2015 was assigned. From approximately November, 2015 to April, 2016 Mr. and Mrs. Kolnberger attended settlement conferences, representing themselves *pro se* without an attorney present. During the course of these hearings, Mr. Kolnberger passed away from his illness.

9.  On or about October 16, 2016, the undersigned was retained by the Defendant to represent her in this matter. The undersigned immediately contacted the Servicer's loss mitigation department, ascertained the status of the case and forwarded updated financial documents. On November16, 2016, the loan was service transferred to Select Portfolio Servicing, Inc (hereinafter, the "Servicer"). On December 9, 2016, the

undersigned forwarded an updated loan modification package to the Servicer. On December 20, 2016, Ms. Kolnberger received a letter from the law firm representing the Servicer (attached hereto as **Exhibit A**) stating that the foreclosure action was put on hold while her loss mitigation application was being reviewed.

### a. The First Denial Letter and the First Appeal Letter

10.    In April 2017, Ms. Kolnberger's loan modification application was denied by the Servicer. This denial letter ("The First Denial Letter") is attached hereto as **Exhibit B**. The First Denial Letter contains a denial of a HAMP Tier 1 Trial Modification, and a HAMP Tier 2 Trial Modification for the reason of "Investor/Guarantor Not Participating." The explanation, if it could be called that, was brief: "We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has the right of approval and has denied this option based on a business decision." The First Denial Letter also contained a denial of an SPS Trial Modification, for essentially the same reason: "We service your mortgage on behalf of an investor or group of investors that has not given us the contractual authority to modify your mortgage."

11.    The First Denial Letter only offered Ms. Kolnberger a repayment plan which was far beyond Ms. Kolnberger's ability to pay. The repayment plan called for twelve monthly payments of $4,304.94 each, followed by a balloon payment of $99,380.78 in April, 2018.

12.    On April 17, 2017 the undersigned forwarded an appeal to the Servicer. This appeal letter ("The First Appeal Letter") is attached hereto as **Exhibit C**. The First Appeal Letter appealed the denial on the following four grounds:

13.   ***First grounds for appeal***. The denial was appealed on the grounds that the

loan had not yet been considered for relief under the consumer relief provisions of the

January 17, 2017 settlement between the United States Department of Justice and

Deutsche Bank AG, under which Deutsche Bank has been ordered to provide $4.1 billion

for consumer relief including principal forgiveness and loan modifications for financially

distressed homeowners.

14.   In 2013, the Department of Justice sued Deutsche Bank for allegedly

misleading investors in the packaging, securitization, marketing, sale and issuance of

residential mortgage-backed securities between 2006 and 2007. The $4.1 billion

consumer relief fund is part of the settlement of that lawsuit. The First Appeal Letter

asked that the Plaintiff be considered for assistance under the settlement.

15.   ***Second grounds for appeal***. The denial was also appealed on the grounds

that the loan modification application was improperly denied because a HAMP Tier 1

Trial Modification, a HAMP Tier 2 Trial Modification and an SPS Trial Modification

were all denied for reason of investor restrictions. This is a violation of both RESPA

Regulations, which require that when a loan modification application is denied because

of investor restrictions, specific criteria for denial must be given, and New York State

case law, which further requires that reasonable efforts must be made to obtain a waiver

from those investor restrictions and that evidence of those investor restrictions be

provided to the Defendant.

16.   Section 12 CFR 1024.41(d) of the Real Estate Settlement Procedures Act

(Regulation X) states:

> "If the servicer denies a loss mitigation application for any trial or
> permanent loan modification option, the notice provided to the borrower

must also state the servicer's specific reason or reasons for denying each trial or permanent loan modification option, and, if applicable, that the borrower was not evaluated on other criteria. Certain disclosures are required when a servicer denies an application for the following reasons or using the following procedures:

- Investor criteria and use of a waterfall.
  - o If the servicer denies a loan modification option based upon investor criteria, the servicer must identify the owner or assignee of the mortgage loan and the specific criteria that the borrower failed to satisfy."

17.    The Consumer Financial Protection Bureau's official analysis of Section

12 CFR 1024.41(d) states:

"If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient."

18.    New York State case law has expanded on the RESPA requirements as

they pertain to loan modification applications and investor restrictions. In *U.S. Bank N.A.*

*v. Smith*, 999 N.Y.S.2d 468, 470, the court found that the plaintiff negotiated in bad faith

because of "Plaintiff's failure to follow guidelines pursuant to the federal Home

Affordable Mortgage Program [whose] applicable guidelines required the plaintiff…to

attempt to obtain a waiver of an investor prohibition or restriction in lowering the interest

rate and to keep such evidence in the loan file. However, despite repeated requests by the

referee to produce evidence that the plaintiff attempted to obtain a waiver of the investor

restrictions in the PSA, the plaintiff failed to do so [.]"

19.    The requirement that a waiver of investor restrictions be sought extends to

loan modification applications not covered by the HAMP regulations. In *Deutsche Bank*

*Natl. Trust Co. v Izraelov*, 977 N.Y.S.2d 666, the court held that a servicer's duties do not end with a mere declaration that investor restrictions prohibit a loan modification, the *Izraelov* court cited Special Referee Deborah Goldstein who argued that, despite the investor restrictions, the requirements of HAMP were still applicable.

> "...[I]f a servicer was restricted or prohibited from freely performing or taking the modification step,... documentation should show that it made reasonable efforts to seek a waiver from the applicable investor and whether the requested waiver was approved or denied." *Id.*

20.    The Plaintiff countered that "any citation to HAMP provisions...are inapposite [in that] HAMP regulations only apply to HAMP participants of which Plaintiff is not." *Id.* The court ruled otherwise, however, stating that "whether or not the loan qualifies for HAMP or not, the most appropriate benchmark for good faith are the HAMP guidelines...A plaintiff's failure to comply based solely on an assertion that HAMP regulations or guidelines do not apply would, at the least, be material to whether the plaintiff is negotiating in good faith as required by CPLR. 3408(f)." *Id.*

21.    The court ruled that when investor regulations prohibit loan modifications, the plaintiff is obligated to provide evidence of that restriction and to seek a waiver of those restrictions:

> "At the very least...a plaintiff who contends that it cannot agree to a loan modification or other arrangement that would allow a defendant to stay in his or her home because of an 'investor' prohibition or restriction must provide the court or referee with suitable documentary evidence of the obstacle, and the court or referee may appropriately direct its production. ... Assuming the prohibition or restriction to exist...the plaintiff has an obligation to proceed in good faith to obtain, what has been called, a "waiver" of the prohibition or restriction in the particular action. The court or referee may require the plaintiff to provide evidence of compliance[.]"

22.     Per the above authorities, the First Appeal Letter included a request that the Plaintiff provide supporting documents for the investor restrictions that were the basis for the denial. On or about June 20, 2017, a letter was received from the Plaintiff which denied without explanation this request for supporting documentation. This letter ("The Document Denial Letter") is attached hereto as **Exhibit D**. The Document Denial Letter simply states that the Servicer is "in receipt of your recent request for information about the loan. We regret to inform you that we are unable to fulfill your inquiry for the documentation requested." The Document Denial Letter clearly puts the Plaintiff in violation of the above-cited RESPA Regulations and New York State case law.

23.     ***Third grounds for appeal***. The denial was also appealed and undersigned petitioned that Ms. Kolnberger should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the First Denial Letter because the HAMP analysis of the loan was already in progress when the loan was service transferred from Bank of America (a HAMP participant) to the Servicer and per the authorities cited below, it was therefore incumbent on the Servicer to continue the HAMP analysis, and it was also incumbent on the Servicer to continue that analysis past the MHA program's termination date of December 30, 2016.

24.     On November 16, 2016, Ms. Kolnberger's loan was service transferred from Bank of America, a HAMP participant, to the Servicer. At the time of the transfer, an active HAMP analysis was ongoing. Per MHA regulations, it was incumbent on the Servicer to continue the HAMP analysis begun by Bank of America. Section 1.4.1 of the Making Home Affordable handbook, Version 5.1, dated May 26, 2016 (the "MHA Handbook") ("Transfers of Servicing / Transfer of Eligible Loans") states as follows:

"When a participating servicer transfers or assigns mortgage loans, or servicing rights relating to mortgage loans, that constitute Eligible Loans pursuant to the SPA, the transferee servicer must assume the transferor's obligations under the SPA with respect to the transferred Eligible Loans. A transferring servicer may not use a transfer to circumvent its existing obligations under the SPA." [1]

25.    Furthermore, that HAMP analysis should have continued even though the HAMP program terminated six weeks after the loan was transferred to the Servicer. Making Home Affordable Supplemental Directive 16-02, "Making Home Affordable Program – MHA Program Termination and Borrower Application Sunset" states that "a borrower who submits an Initial Package [2] on or before [the MHA program termination date of] December 30, 2016 must be evaluated for HAMP, provided that such borrower meets all applicable eligibility criteria set forth in Section 1 of Chapter II."

26.    Ms. Kolnberger met both requirements of Supplemental Directive 16-02. First, she submitted an Initial Package to Bank of America, the original servicer and a HAMP participant, in August of 2016. The HAMP analysis was still underway when the loan was service transferred to the Servicer on November 16, 2016. Second, her loan meets all the applicable eligibility criteria set forth in Section 1 of Chapter II of the MHA Handbook in that (i) her loan is a first lien mortgage loan originated on or before January 1, 2009, (ii) her property had not been condemned, (iii) she has documented a financial hardship, (iv) she has agreed to set up an account for taxes and hazard and flood insurance, (v) the unpaid principal balance for her single family house is less than

---

[1] "SPA" is defined as the Servicer Participation Agreement that participating servicers had to register with the MHA program administrator. Loans that constitute "Eligible Loans" are as defined in that SPA.

[2] "Initial Package" is defined in Chapter 2, Section 4 of the MHA Handbook as (i) the RMA form, (ii) form 4506-T, (iii) evidence of income and (iv) Dodd Frank Certification.

.

$729,750, (vi) the mortgage loan is secured by a one-family property and (vii) the borrower submitted an Initial Package on or before December 30, 2016.

27.    ***Fourth grounds for appeal***. The denial was appealed and undersigned petitioned that Ms. Kolnberger should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the First Denial Letter because a loan modification analysis under HAMP and SPS programs had been promised during the application process and because the Servicer's conduct in repeatedly requiring updated documents indicated that such an analysis was being conducted.

28.    The First Denial Letter stated that Ms. Kolnberger's loan could not be considered for a HAMP Tier 1, HAMP Tier 2 and SPS Trial Modification because the investor did not participate in those programs. The words and the actions of the Servicer during the loan modification analysis period, however, gave every indication that Ms. Kolnberger's loan modification application was being considered for those programs.

29.    Following is a partial record of conversations with and document requests by the Servicer:

- On November 16. 2016, Ms. Kolnberger's mortgage loan was service transferred to the Servicer.

- On November 28, 2016, I had a phone conversation with Ms. Tacarra King of the Servicer. I informed her that we were in the middle of a loan modification analysis with the previous servicer when the loan was service transferred, and I asked her what, if anything, she needed to continue this process. She gave me a list of documents and advised that the loan would be analyzed for a HAMP Tier 1

loan mod, HAMP Tier 2 loan mod, SPS Program modification and a repayment plan. The requested documents were promptly provided.

- On December 21, 2016, I had a phone conversation with Ms. Michele Kiefer of the Servicer who advised me which additional documents were needed for the loan modification analysis, including which documents would be needed in order for 100% of Ms. Kolnberger's mother's social security income to be used as contributory income. These additional documents were promptly provided.

- On January 11, 2017, I had a phone conversation with Mr. Chris Krukowski of the Servicer who informed me that two more bank statements were needed to show rental deposits. These were promptly provided.

- On February 17 or 18 I had another phone conversation with Mr. Krukowski who informed me that additional documents relating to deposit of Mr. Kolnberger's mother's social security check were needed. These were promptly provided.

30.    Again, the words and the actions of the Servicer clearly indicated that Ms. Kolnberger was being considered for a loan modification. To now suddenly reverse course and say she was not and basically never was, indicates that the Servicer was acting in bad faith throughout the loan modification process. In this respect, the facts of this case mirror the facts of *U.S. Bank N.A. v. Williams*, cited above as an example of bad faith negotiations in that the plaintiff in this case put the Defendant through a lengthy loan modification process even though the plaintiff knew all along that investor restrictions allegedly prohibited the loan modification. That the Servicer would behave in this manner even as Deutsche Bank was signing off on what has been described as the largest

fine ever levied by the Department of Justice - more than half of which was earmarked to assist homeowners in distress - is concerning to say the least.

### b. The Second Denial Letter and the Second Appeal Letter

31.    On or about May 12, 2017, a second denial letter was received. (This letter, the "Second Denial Letter," is attached hereto as **Exhibit E**.) The Second Denial Letter did not address the four grounds for appeal provided in the First Appeal Letter and as outlined above. The Second Denial Letter only stated, without further elaboration, that "In response to your appeal of the decision notice dated March 31, 2017, SPS complies with all relevant state and federal requirements in connection with the servicing of your client's lien. SPS respectfully disagrees with your suggestion that SPS has violated applicable law in regard to reviewing your client's account for loss mitigation."

32.    The Second Denial Letter ended by referring me to the above-mentioned Mr. Chris Krukowski, who the letter identified as the Servicer's Relationship Manager for this matter. At about the same time, the undersigned received an email from the Deutsche Bank Consumer Relief Group in charge carrying out the consumer relief provisions of the above-described Justice Department Settlement. The Consumer Relief Group email also referred me to Mr. Krukowski, saying that the servicer "is solely responsible for servicing the loans in the Trust, including such loan servicing activities as loan modification and loan forgiveness." This directly contradicts the reason given for the denial in the First Denial Letter, which points to investor guidelines, not the Servicer, as the reason for the denial.

33.    In response to the Second Denial Letter, the undersigned sent a second appeal letter to the Plaintiff on or about June 10. (This letter, the "Second Appeal Letter,"

is attached hereto as **Exhibit F**.) Just prior to that, however, a letter was received from the Plaintiff which detailed other options, besides loan modification, that might be available to the Defendant. (This letter, the "Option Letter," is attached hereto as **Exhibit G**.) The Option Letter offered a payment deferral option which it described as follows: "With this program, your account will become contractually current by adding the past due payments to the end of your loan." The Second Appeal letter repeated the four grounds for appeal that were presented in the First Appeal Letter, as those four grounds had as yet gone unaddressed, and also asked that the Plaintiff consider the Defendant for the payment deferral option.

## Motion for Judgment of Foreclosure and Sale

The part of the Motion that comprises an application by the Plaintiff for a Judgment of Foreclosure and Sale should be denied because as discussed above the mandatory settlement conference part and the loss mitigation process have yet to be completed. Furthermore, the application is flawed in that the Plaintiff moves that the Court rule that "good cause be found for the delay" in re-filing the application, but as discussed the delay was actually caused by bad faith negotiations and willful dilatory tactics on the part of the Plaintiff in the settlement conference process.

## Relief Sought

34.    The Defendant respectfully requests that the court find that the Plaintiff has failed to negotiate in good faith pursuant to PLR § 3408(f) and 22 NYCRR § 202.12-a (4). Per case law discussed above, the totality of circumstances leaves little doubt that

the Plaintiff and the Servicer have acted in bad faith. Some of the examples of bad faith shown by the Plaintiff and the Servicer in this matter are:

- Plaintiff/Servicer has wasted judicial resources and acted in a harmful and deleterious manner by not responding to the four issues raised in the First Appeal Letter, by ignoring the Second Appeal Letter, and by filing this Motion claiming that the loan modification process was over and that this matter should therefore move forward to foreclosure.

- Plaintiff/Servicer has violated RESPA and New York State case law by not providing specific information about the investor guidelines that allegedly prohibit a loan modification in this instance, and by refusing to seek a waiver of those restrictions, and by refusing to provide supporting documentation regarding those provisions.

- Plaintiff/Servicer has denied the Defendant a loan modification without setting forth grounds.

- Plaintiff/Servicer has caused delay and confusion by asserting in the First Denial Letter that Investor restrictions necessitated their denial, but then in an email to me asserting that the Servicer is "solely responsible" for loan modification and loan forgiveness.

- Plaintiff/Servicer caused the Defendant to submit multiple financial documents and applications even though they knew that investor restrictions allegedly prohibited the Plaintiff from modifying the loan.

WHEREFORE, In light of the above, the undersigned requests the following sanctions be imposed by the court:

- Since the loss mitigation process is still ongoing and has not been concluded, and since the Motion was therefore completely without merit and asserts material factual statements that are false, and since the filing of the Motion was therefore frivolous per C.P.L.R. § 3408(j)(3) and 22 NYCRR 130-1.1(a), the undersigned requests that the Plaintiff be directed to reimburse Ms. Kolnberger in the amount of $2,500, which is the amount of the legal fees she paid to the undersigned since he was retained at the beginning of this loss mitigation process plus an additional amount to be determined for their time attending settlement conferences and seeing to the loss mitigation applications and updates, including time spent while Mr. Kolnberger was ill and in the mourning period following his death.

- Per C.P.L.R. § 3408(j)(3) and 22 NYCRR 130-1.1(a), the undersigned requests to be reimbursed for legal fees incurred in responding to this Motion which, again, was frivolous and unnecessary.

- Per the provisions of C.P.L.R. § 3408(j), the undersigned respectfully requests that the court toll the accumulation and collection of interests, costs and fees retroactive to the beginning of the loss mitigation process, compel production of documents related to investor restrictions that the Plaintiff has thus far refused to produce, impose a civil penalty payable to the state that is sufficient to deter repetition of the conduct and in an

amount not to exceed $25,000, and award any other relief that the court

deems just and proper.

June 25, 2016
Astoria, New York

Phillip Mahony, Esq.
Steinway Law Offices
21-83 Steinway Street
Astoria, NY 11105
mahonylaw@outlook.com
917-414-6795
Fax 844-269-2809

## CERTIFICATION BY ATTORNEY

I, Phillip Mahony, am an attorney duly admitted to the practice of law in the State of New York. I am the attorney for Defendant Joann Kolnberger, in the above-captioned civil action

I HEREBY CERTIFY, pursuant to § 130-1.1-a of the Rules of the Chief Administrator (22 NYCRR), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the presentation of the Response in the action, or the contentions therein, are not frivolous as defined in subsection (c) of § 130-1.1 of the Rules of the Chief Administrator (22NYCRR).

Dated:      June 25, 2017
            Queens, New York

Phillip Mahony, Esq.
Steinway Law Offices
21-83 Steinway Street
Astoria, NY 11105
mahonylaw@outlook.com
917-414-6795
Fax 844-269-2809

# Exhibit A

Law Offices of

# Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-0000
FAX (585) 247-7580

December 20, 2016

Nassau County Foreclosure Part
Nassau County Courthouse
100 Supreme Court Drive
Mineola, NY 11501

*VIA HAND DELIVERED*

RE:   **Deutsche Bank National Trust Company, as Trustee under The Pooling and
      Servicing Agreement Relating to IMPAC Secured Assets Corp., Mortgage
      Pass-Through Certificates, Series 2006-4 v. Joann Kolnberger and Michael
      Kolnberger, et al.**
      **Index No.: 15-007128**
      **Our File Number: 15-044961**

Dear Sir or Madam:

Please be advised that our client placed the above-referenced action on hold while the borrower's
account is under review for potential loss mitigation options.

In light of Consumer Finance Protection Bureau regulations which prohibit dual tracking in
certain limited circumstances, out of an abundance of caution, Plaintiff would like to withdraw
its pending application while the borrower's account is reviewed for loss mitigation options. If
no viable loss mitigation option can be implemented, Plaintiff will re-submit the application for
the Court's review.

Based on the foregoing, we respectfully request that the Judgment of Foreclosure and Sale
submitted for your review on or about October 13, 2016 be withdrawn. Please provide a written
reply to said withdraw request by email to abojak@logs.com or by fax to (585) 247-7380.

Thank you for your consideration in this matter. Should you have any questions, please feel free
to contact me directly at (585) 295-6354.

Very respectfully,

Adam L. Bojak, Esq.
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff

ATTORNEYS AT LAW

# Exhibit B



March 31, 2017



JOANN KOLNBERGER
106 PARK HILL AVENUE
MASSAPEQUA, NY 11758

Customer Name(s):  JOANN KOLNBERGER
Account Number:
Property Address:  106 PARK HILL AVENUE
MASSAPEQUA, NY 11758

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS has completed its review of your complete Assistance Review Application. Based on the information you have provided, SPS has made a decision, outlined below. Thank you for completing your Assistance Review Application and submitting all required documentation. Please note that the decisions in this letter represent the evaluation of all home retention loss mitigation options available to you, ensuring you receive a fair and complete evaluation. Our reviews are conducted in accordance with applicable laws and investor eligibility rules. SPS is committed to a policy of nondiscrimination in all aspects of its servicing program.

## Loss Mitigation Program Decision

Congratulations! You have qualified for and we are pleased to offer you a Repayment Plan. This program is intended to help you avoid foreclosure or other legal action. Attached you will find the terms and conditions of our approval along with instructions to accept the offer. It is important that you read it carefully and comply with the terms outlined in the agreement. If after reading through the terms and conditions of the offer you find that you are unable to meet the requirements, or you have further questions, please contact SPS.

This offer must be accepted by April 24, 2017, or we will consider the offer rejected. Please note that if you do not accept this offer by the due date listed above, you may lose your opportunity to participate in these options now and in the future.

## Non-Home Retention Options

You may also be eligible for non-home retention options. Our approval of these non-home retention options is conditioned upon our receipt of information that may not be in your possession (e.g., appraisal or title search) that is necessary to establish the specifics of the offer. Depending on what the documents show, the specific option may not be available.



**Short Sale.** If you are interested in selling your property but owe more than your home is worth, a short sale may be an option. In a short sale, SPS allows you to sell the mortgaged property and pay off your mortgage account for an amount which is less than the outstanding balance, interest and fees. Approval for this option is conditioned upon receipt of required documentation, investor, and/or mortgage insurer approval, if required, and evaluation of the amount being presented for pay off of the outstanding lien. If you are interested in this option and have a current purchase offer on your home, please contact us immediately. If you are interested in selling your home, but need assistance in finding an experienced real estate agent to assist you, SPS can refer you to an agent in your area. Please contact one of our representatives at the number below for more information.

**Deed in Lieu of Foreclosure.** With a deed in lieu, you agree to transfer the title or ownership of your property to the owner or servicer of your mortgage in order to avoid foreclosure sale and satisfy all or a portion of the mortgage debt. The amount of debt satisfied by this transfer of ownership is based on the approved value of your home. In some cases, you may be responsible for a remaining balance of the mortgage debt over and above the approved value. This option is conditioned upon receipt of required documentation, investor and/or mortgage insurer approval, if required, and the ability to provide title to the property clear of all other liens.

As stated, these options have different requirements and guidelines, and not all accounts will qualify. Moreover, some of these options may offer financial assistance for your relocation. Please contact SPS for more detail.

## Regulatory Notice of Non-Approval

Even though you are approved for a Repayment Plan, federal law requires us to disclose the programs for which you have been reviewed, but not approved, or are otherwise ineligible for review. SPS reviewed your complete Assistance Review Application for eligibility under its loss mitigation options, which are established through investor rules and are based on your individual circumstances. All program(s) below are the program(s) for which you were denied and the specific reason for non-approval. These denials are based on the criteria where your account did not pass the program eligibility requirements; we did not consider other criteria regarding ineligibility as part of our decision.

- **HAMP Tier 1 Trial Modification**

  **Investor/Guarantor Not Participating.**
  We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has a right of approval and has denied this option based on a business decision.

- **HAMP Tier 2 Trial Modification**

  **Investor/Guarantor Not Participating.**
  We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has a right of approval and has denied this option based on a business decision.

- **SPS Trial Modification**

  **Investor/Guarantor Not Participating.**
  We are unable to offer you this program because:
  • We service your mortgage on behalf of an investor or group of investors that has not given us the contractual authority to modify your mortgage. The owner of your mortgage is Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4.

- **Home Affordable Unemployment Program (HAUP)**

  **Account Delinquency.**
  We are unable to offer you this program based on the delinquency of your account.

- **SPS Unemployment Program**

  **Account Delinquency.**
  We are unable to offer you this program based on the delinquency of your account.

## Right to Appeal

You have the right to appeal any non-approval by providing a written explanation of why you believe our determination was incorrect, along with all supporting evidence, within thirty (30) days of the date of this letter to:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277
Relationship.Manager@SPServicing.com

You have thirty (30) calendar days from the date of this notice to contact SPS to discuss the reason for non-approval. **No foreclosure sale will be conducted and you will not lose your home during this 30-day period or any longer** period required for us to review supplemental material you may provide in response to this notice. If a foreclosure sale has already been scheduled we will instruct our attorney to file a motion to postpone such sale. It is possible however that a court will deny the motion and the sale will proceed. If that happens we will be unable to provide loss mitigation.

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 800-342-3736 or www.dfs.ny.gov.**

## Notice of Error or Information Request

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

## Contact Us

If you have any questions, your assigned Relationship Manager, Chris Krukowski, can be reached toll free at 866-820-6218 Ext. 37683 or by email at Relationship.Manager@SPServicing.com.

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like to speak with a HUD approved counselor, call the Homeowner's HOPE™ Hotline 888-995-HOPE (4673). The Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20552.

**Net Present Value (NPV) Results**
Below are the inputs used in the NPV calculation conducted during our review for the HAMP Trial Modification loss mitigation option.

## NPV Data Input Field Values (HAMP)

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of *(OUT mortgage)* |
|---|---|---|
| **I. Customer Information** | | |
| 1. Current Customer Credit Score | This field identifies your credit score as provided by one or more of the three national credit reporting agencies. | 660 |
| 2. Current Co-customer Credit Score | If a co-customer is listed on the mortgage, this field identifies the co-customer's credit score as provided by one or more of the three national credit reporting agencies. | |
| 3. Monthly Gross Income | This field identifies the monthly gross income of all customers on your loan before any payroll deductions or taxes.

If the subject property (e.g., the property securing the loan for which the customer is requesting a HAMP modification) is a rental property, the rental income is excluded. | $7,047.04 |
| 4. Principal Residence Total Housing Expense | This field only applies if your application for a HAMP modification is for a property that is not your principal residence.

This field identifies the amount of the total monthly housing expense (i.e., principal, interest, taxes, insurance and association fees, if any) for your principal residence, and the principal residence(s) of any co-customer(s). | $0.00 |
| **II. Property Information** | | |
| 5. Property - State | This field identifies the state in which the property securing the mortgage is located for which you are applying for a HAMP modification. | NY |
| 6. Property - Zip Code | This field identifies the zip code of the property securing the mortgage for which you are applying for a HAMP modification. | 11758 |
| 7. Property Value | This field identifies the estimated fair market value of the property for which you are applying for a HAMP modification that was used for this analysis. | $455,000.00 |
| 8. Property Valuation Type | This field identifies the method by which the property for which you are applying for a HAMP modification was valued (as noted in Field 6, Property Value)

1 – Automated Valuation Model (AVM)
2 – Exterior Broker Price Opinion (BPO) / Appraisal (as is value)
3 – Interior BPO / Appraisal (as is value) | 2 - Exterior BPO/Appraisal |
| 9. Occupancy | This field uses codes to identify the occupancy of the property for which you are applying for a HAMP modification.

The servicer will for owner-occupied properties use a code of 1, 3 or 4 and for nonowner - occupied properties will use a code of 2. | 1 |
| 10. Property - Monthly Gross Rental Income | This field only applies if your application for a HAMP modification is for a property that is not your principal residence.

This field identifies the monthly gross rental income from the property for which you are applying for a HAMP modification. | |



| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| | **III. Mortgage Information** | |
| 11. Data Collection Date | This field identifies the date on which the Unpaid Principal Balance and other data used in the NPV analysis was collected by us. | 03/28/2017 |
| 12. Imminent Default Flag | This field indicates your default status as of the Data Collection Date. If you have not missed any payments or less than two payments are due and unpaid by the end of the month in which they are due, you are considered to be in imminent default and the value in this field is "Y". If two or more payments are due and unpaid by the end of the month in which they are due as of the Data Collection Date, the value in this field is "N". | N |
| 13. Investor Code | This field identifies the owner of the mortgage for which you are applying for a HAMP modification.<br>1 – Fannie Mae<br>2 – Freddie Mac<br>3 – Owned by a private investor other than us, your servicer<br>4 – Owned by us, your servicer or an affiliated company<br>5 – Ginnie Mae | 3 - Private |
| 14. Unpaid Principal Balance at Origination | This field identifies the amount of the mortgage for which you are applying for a HAMP modification at the time it was originated (i.e., the amount you borrowed). | $458,000.00 |
| 15. First Payment Date at Origination | This field identifies the date the first payment on the mortgage for which you are applying for a HAMP modification was due after it was originated. | 11/01/2006 |
| 16. Product Before Modification | This field uses codes to identify the type of mortgage you held prior to your most recent application for a HAMP modification:<br>1. Adjustable Rate Mortgage (ARM) and/or Interest Only mortgage loan<br>2. Fixed Rate<br>3. Step Rate<br>4. One Step Variable<br>5. Two Step Variable<br>6. Three Step Variable<br>7. Four Step Variable<br>8. Five Step Variable<br>9. Six Step Variable<br>10. Seven Step Variable<br>11. Eight Step Variable<br>12. Nine Step Variable<br>13. Ten Step Variable<br>14. Eleven Step Variable<br>15. Twelve Step Variable<br>16. Thirteen Step Variable<br>17. Fourteen Step Variable | 1 - ARM |
| 17. Adjustable Rate Mortgage (ARM) Reset Date | This field applies only if the type of mortgage you held prior to your most recent application for a HAMP modification is an Adjustable Rate Mortgage (ARM) loan.<br><br>This field identifies the date on which the next Adjustable Rate Mortgage (ARM) reset was due to occur, as of the Data Collection Date (Field 11). | 05/01/2017 |

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| 18. Next Adjustable Rate Mortgage (ARM) Reset Rate | This field identifies the rate at which your mortgage was expected to change based on when the next reset date (Field 14) is scheduled to occur. Please look to your mortgage loan documentation for information on when your mortgage's rate is rescheduled at its reset date.<br><br>If the reset date on your ARM loan is within 120 days of the Data Collection Date, this value in this field is the expected interest rate on your mortgage at the next reset date.<br><br>If the reset date on your ARM loan is more than 120 days from the Data Collection Date, the value in this field is your current interest rate at the time of NPV evaluation. | 4.12500% |
| 19. Unpaid Principal Balance Before Modification | This field identifies the unpaid principal amount of principal (money) you borrowed on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. It does not include any unpaid interest or other amounts that you may owe. | $462,133.04 |
| 20. Interest Rate Before Modification | This field identifies the interest rate on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information on the interest rate of your mortgage. | 3.60000% |
| 21. Remaining Term (# of Payment Months Remaining) Modification | This field identifies the remaining number of months you have left to pay under the terms of the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information on the term of your mortgage. | 235 |
| 22. Principal and Interest Payment Before Modification | This field is the amount of principal and interest you were scheduled to pay each month as of the Data Collection Date.<br><br>A. If your loan had an adjustable rate scheduled to reset within 120 days, this field will reflect the principal and interest payment associated with the new interest rate.<br><br>B. If your loan had an adjustable rate scheduled to reset after 120 days, this field will reflect the current scheduled monthly mortgage payment and the new interest rate in effect at the time of evaluation.<br><br>C. If your mortgage is an Interest Only loan and your loan was in the interest only period, the value in this field is the interest payment that was due each month.<br><br>D. If your mortgage is a negative-amortization loan, the value in this field is the greater of:<br>a. the principal and interest payment you sent on the most recent payment date; or<br>b. the minimum payment required on your loan.<br><br>For a loan that defaulted under the HAMP Trial Period Plan, enter the contractual monthly P&I payment as of the Data Collection Date. For a loan that defaulted under the HAMP Tier 1 permanent modification, enter the permanent HAMP Tier 1 modification monthly P&I payment. | $1,347.89 |
| 23. Monthly Real Estate Taxes | This field identifies the monthly cost of your real estate taxes. If your taxes are paid annually this amount will be 1/12th of the annual cost. | $708.22 |

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| 24. Monthly Hazard and Flood Insurance | This field identifies the monthly cost of your hazard and flood insurance coverage. If your insurance is paid annually this amount will be 1/12th of the annual cost. | $165.60 |
| 25. Homeowners Association Dues/Fees | This field identifies your monthly homeowner's or condominium association fee payments. If any, and/or any future monthly escrow shortages. If your homeowner's or condominium association fee payments are paid annually, this will be 1/12th of the annual cost. If your property has no association fee payments and/or any future monthly escrow shortages, this field is blank. | $0.00 |
| 26. Months Past Due | This field identifies the number of mortgage payments you would have had to make in order to make your mortgage current, as of the Data Collection Date. | 30 |
| 27.Mortgage Insurance Coverage Percent | This field identifies the percentage of private mortgage insurance coverage on the mortgage for which you are applying for a HAMP modification. If you do not have private mortgage insurance this field is blank. | 0% |
| 28. Capitalized UPB Amount | This field identifies the capitalized unpaid principal balance amount that includes all outstanding principal, accrued interest, escrow advances as of the data collection date. | $529,664.18 |

## IV. Proposed Modification Information

The fields below describe the proposed HAMP modification that was calculated by your servicer according to the HAMP program guidelines (subject to investor restrictions) that were used in your Net Present Value (NPV) evaluation.

| | | |
|---|---|---|
| 29. NPV Date | This field identifies the initial date that the Net Present Value evaluation was conducted on the mortgage for which you are applying for a HAMP modification. | 03/28/2017 |
| 30. Modification Fees | This field identifies the total amount of costs and fees that would have been paid by the investor (owner) of your loan, if you had been approved for a HAMP modification. It includes expenses such as notary fees, property valuation, credit report and other required fees. | $0.00 |
| 31. Mortgage Insurance Partial Claim Amount of the Proposed HAMP Modification | This field identifies any mortgage insurance payout amount as part of the proposed HAMP modified mortgage, which is, at the discretion of your mortgage insurance company. This should be zero if you were not approved for a trial period plan or permanent HAMP modification for reason of negative NPV. | $0.00 |
| 32. Unpaid Principal Balance of the Proposed HAMP Tier 1 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance on which you would have been required to pay interest if you had received a HAMP Tier 1 modification. It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 36) or proposed principal forgiveness (Field 37). | $432,600.00 |
| 33. Interest Rate of the Proposed HAMP Tier 1 Modification | This field identifies the starting interest rate of the proposed HAMP Tier 1 modified mortgage. This rate is fixed for at least the first 5 years after modification. | 2.00000% |



[redacted]

[redacted]

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| 34. Amortization Term of the Proposed HAMP Tier 1 Modification | This field identifies the number of months left to pay the proposed HAMP Tier 1 modified mortgage. | 480 |
| 35. Principal and Interest Payment of the Proposed HAMP Tier 1 Modification | This field identifies the amount of the monthly principal and interest payment on the proposed HAMP Tier 1 modified mortgage. | $1,310.02 |
| 36. Principal Forbearance Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forbear on the proposed HAMP Tier 1 modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | $87,064.18 |
| 37. Principal Forgiveness Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 1 modified mortgage. | $0.00 |
| 38. Unpaid Principal Balance of the Proposed HAMP Tier 2 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance [as of the Data Collection Date] on which you would have been required to pay interest if you had received a HAMP Tier 2 modification.<br><br>It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 43 or the amount calculated by the NPV model under the standard Tier 2 modification) or proposed principal forgiveness (Field 39). | $523,250.00 |
| 39. Principal Forgiveness Amount of the Proposed HAMP Tier 2 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 2 modified mortgage. | $0.00 |
| 40. Investor Override for Tier 2 Modification | This field indicates whether the owner of your mortgage provides for different terms than would be provided under the standard HAMP Tier 2 Modification. If not, the value in this field is "N". If there are terms other than the standard terms, the value in this field is "Y". | N |
| 41. Interest Rate of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different interest rate than would be provided under the standard HAMP Tier 2 Modification.<br><br>This field identifies the interest rate of the proposed HAMP Tier 2 modified mortgage. This rate is fixed. | |
| 42. Amortization Term of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different amortization term than would be provided under the standard HAMP Tier 2 Modification.<br><br>This field identifies the number of months left to pay the proposed HAMP modified mortgage. | |
| 43. Principal Forbearance Amount of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different forbearance amount than would be provided under the standard HAMP Tier 2 Modification.<br><br>This field identifies the amount of principal forborne on the proposed HAMP modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | |

March 31, 2017

## REPAYMENT PLAN

Re: Customer Name(s): JOANN KOLNBERGER
    Account Number:
    Property Address: 105 PARK HILL AVENUE
                      MASSAPEQUA, NY 11758

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect, and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS is pleased to inform you that you have been approved for a temporary repayment plan to assist you in making payments against the lien on the above-referenced property. The terms of this repayment plan, which are detailed below, include the payment amounts and steps necessary for you to bring your account contractually current.

### Plan Payments

Your trial Plan payments will take the place of your normal monthly mortgage payments during the term of the Plan. **You must make each of the below-listed payments by or before the listed due dates, or this Plan will be canceled.** Your Plan payments and due dates are as follows:

| Payment | Due Date | Amount |
|---|---|---|
| Payment 1 | 04/24/2017 | $4,304.94 |
| Payment 2 | 05/24/2017 | $4,304.94 |
| Payment 3 | 06/24/2017 | $4,304.94 |
| Payment 4 | 07/24/2017 | $4,304.94 |
| Payment 5 | 08/24/2017 | $4,304.94 |
| Payment 6 | 09/24/2017 | $4,304.94 |
| Payment 7 | 10/24/2017 | $4,304.94 |
| Payment 8 | 11/24/2017 | $4,304.94 |
| Payment 9 | 12/24/2017 | $4,304.94 |
| Payment 10 | 01/24/2018 | $4,304.94 |
| Payment 11 | 02/24/2018 | $4,304.94 |
| Payment 12 | 03/24/2018 | $4,304.94 |
| Balloon Payment | 04/24/2018 | $99,380.78 |



**Form of Payment**

You must make your first payment on or before the due date by certified funds. Certified funds include, Western Union Quick Collect (code city Oswald), cashier's check, money order or wire transfer (contact SPS for wire instructions). Subsequent payments must be made on or before the applicable due date and can be made by personal check, EZ pay via telephone or SPS's website, or by certified funds. Please send payments to:

PO Box 65450 Salt Lake City, UT 84165-0450

**Application of Payments**

Payments made under this Plan will be applied to amounts due and past due on your account as necessary to bring your account contractually current. Please note that if your taxes or insurance increase during the term of this Plan, you will be required to pay the amount of any such increase in addition to the amounts set forth above. Otherwise, an escrow shortage may result. Funds may be held in a non-interest bearing account until they total an amount that is enough to pay the oldest delinquent monthly payment.

If you receive a payment increase notice due to an adjustable or step rate change, you will need to include the increase in future forbearance payments based on the payment change effective date; otherwise the account may not be current at the end of the plan or the balloon amount may increase.

**Plan Term**

This Plan becomes effective as of the date that you have made the First Payment shown above. This Plan will terminate upon SPS receiving the final Balloon payment on or before the final payment due date. Failure to make any of the specified payments in full, by the due date, will also result in the termination of this Plan.

If you are unable to pay the balloon payment before the end of the month in which it is due, please contact us to discuss additional options to resolve the remaining delinquency.

**Forbearance**

During the Plan term, SPS will not proceed to foreclosure sale or commence foreclosure proceedings on the above-referenced property, provided that you are making timely payments in compliance with the terms of this Plan. We may commence foreclosure proceedings or commence a sale of the property if you do not comply with the terms and conditions of this Plan.

If you are unable to pay the balloon payment before the end of the month in which it is due, please contact us to discuss additional options to resolve the remaining delinquency.

**Terms Not Modified**

All terms and conditions of the current mortgage documents pertaining to this account remain in full force and effect, and you agree to comply with those terms and conditions. However, during the term of the Plan you may make the Plan payment instead of the payment required under your mortgage documents. Nothing in the Plan shall be understood or construed to be a satisfaction or release, in whole or in part, of any obligations under the mortgage documents.

**Delinquent Taxes and Insurance**

You agree to pay any and all delinquent property taxes relating to the real property and provide proof of such payment to SPS prior to the date that the final payment is due under this Plan. You also agree to provide proof of hazard insurance coverage (and, where required, proof of flood insurance coverage) for the real property and deliver such proof of insurance to SPS prior to or on the due date of your first payment. If you fail to provide proof of insurance, SPS may, pursuant to applicable law and SPS policies, purchase insurance on the real property, in which case you agree to repay SPS for such insurance.

**Net Present Value (NPV) Results**
Below are the inputs used in the NPV calculation conducted during our review for the SPS Trial Modification loss mitigation option.

## NPV Data Input Field Values (SPS)

| Input Data Fields | Explanation | Value used in NPV calculation to determine the eligibility of your mortgage |
|---|---|---|
| **I. Customer Information** | | |
| 1. Current Customer Credit Score | This field identifies your credit score as provided by one or more of the three national credit reporting agencies. | |
| 2. Current Co-customer Credit Score | If a co-customer is listed on the mortgage, this field identifies the co-customer's credit score as provided by one or more of the three national credit reporting agencies. | |
| 3. Monthly Gross Income | This field identifies the monthly gross income of all customers on your mortgage before any payroll deductions or taxes. | |
| **II. Property Information** | | |
| 4. Property Value | This field identifies the estimated fair market value of your property used by us, your servicer for this analysis. | $455,000.00 |
| 5. Property Valuation Type | This field identifies the method by which your property was valued (as noted in Field 6, Property Value).<br><br>1. Automated Valuation Model (AVM)<br>2. Exterior Broker Price Opinion (BPO) /Appraisal (as is value)<br>3. Interior BPO /Appraisal (as is value) | DRVB |



# Exhibit C

**Phillip Mahony, Esq.**
Bankruptcy - Foreclosure - Debt Settlement
35-37 36th Street, Astoria NY 11106
Phone: 917-414-6795
Fax: 844-269-2809
mahonylaw@outlook.com
www.mahonylaw.com

To:
Select Portfolio Servicing Inc.
PO Box 65277
Salt Lake City, UT 84165-0277

Subject:
Appeal of Loan Modification Denial
Joann Kolnberger
106 Park Hill Avenue
Massapequa, NY 11758
Account #

April 17, 2017

Greetings,

In regards to the loan modification application of Ms. Joann Kolnberger, please consider this letter to be an appeal to reconsider the findings described in the letter from Select Portfolio Servicing Inc. (the "Servicer") dated March 31, 2017 (the "Denial Letter", attached hereto as Exhibit A.) In the Denial Letter, all loan modification options were denied. Only a repayment plan was offered which is far beyond Ms. Kolnberger's ability to pay. The repayment plan called for twelve monthly payments of $4,304.94 each, followed by a balloon payment of $99,380.78 in April of next year.

## Summary

Our appeal is based on the following grounds, which are spelled out in detail in the body of this letter.

1. This loan modification application should not be denied because it should be considered for relief under the consumer relief provisions of the January 17, 2017 Settlement between the United States Department of Justice and Deutsche Bank AG.

2. This loan modification application should not be denied because to deny a loan modification solely for reason of "Investor/Guarantor Not Participating" without further explanation and without demonstration of a good faith effort to seek a waiver of those

# Phillip Mahony, Esq.
## Bankruptcy - Foreclosure – Debt Settlement

---

restrictions is in violation of New York State Supreme Court case law and RESPA Regulations.

3. This loan modification application should not be denied and Ms. Kolnberger should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the Denial Letter because the HAMP analysis of the loan was already in progress when the loan was service transferred to the Servicer and it was therefore incumbent on the Servicer to continue that analysis, and it was also incumbent on the Servicer to continue that analysis past the MHA program's termination date of December 30, 2016.

4. This loan modification application should not be denied and Ms. Kolnberger should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the Denial Letter because a loan modification analysis under HAMP and SPS programs had been promised during the application process and because the Servicer's conduct in repeatedly requiring updated documents indicated that such an analysis was being conducted.

## Relief Requested

Pages 5-9 of the Denial Letter contains a HAMP analysis of Ms. Kolnberger's loan modification application which shows that she qualifies for a very reasonable and affordable HAMP loan modification. Under the analysis, the investor would forbear $97,064 in principal so that Ms. Kolnberger would be approved for monthly P&I payment amount of $1,310.02.

It is beyond my understanding why the Servicer included this lengthy, detailed analysis of the HAMP option in the Denial Letter, only to simultaneously declare that Ms. Kolnberger would not be offered it due to "Investor/Guarantor Not Participating." Nevertheless, the arguments listed below will show that the loan modification worked out on pages 5-9 of the Denial Letter, or one very similar to it, should be granted to Ms. Kolnberger.

## Arguments

1. This loan modification application should not be denied because it should be considered for relief under the consumer relief provisions of the January 17, 2017 Settlement between the United States Department of Justice and Deutsche Bank AG.

On January 17, 2017, the United States Department of Justice and Deutsche Bank AG reached a settlement to end litigation brought by the Department of Justice against Deutsche Bank AG for allegedly misleading investors in the packaging, securitization, marketing, sale and issuance of residential mortgage-backed securities between 2006 and 2007 (the "Settlement"). As part of the Settlement, Deutsche Bank AG agreed to provide

2

# Phillip Mahony, Esq.
## Bankruptcy - Foreclosure – Debt Settlement

---

$4.1 billion in relief to underwater homeowners, distressed borrowers and affected communities.

Mr. Michael J. Bresnick of the law firm Venable LLP has been appointed the independent monitor of the implementation of the consumer relief provisions of the Settlement. I have conferred with Mr. Bresnick about Ms. Kolnberger's loan modification application and he has asked me to keep him apprised of the progress of this appeal and to "cc" him on all emails to the Servicer in this matter.

Be advised that, as Mr. Bresnick's suggestion, a copy of this appeal is being forwarded to the Deutsche Bank point of contact for the Settlement's consumer relief provisions at db.consumerrelief@db.com.

The Denial Letter includes a denial of a HAMP Tier 1 Trial Modification, HAMP Tier 2 Trial Modification and an SPS Trial Modification, all for the reason of "Investor/Guarantor Not Participating." No other reasons are given in each case. There is no indication in the Denial Letter that Ms. Kolnberger's loan modification application was considered for relief under the consumer relief provisions of the Settlement as contained in the Settlement Agreement and in Annex 2 of the Settlement. [1]

Ms. Kolnberger is exactly the kind of honest, hardworking, distressed borrower the consumer relief provisions of the Settlement were put in place to help. She fell behind on her mortgage because of the death of her husband, the primary breadwinner in her household, and, subsequently, because of expenses incurred in the treatment of her daughter's drug addiction, a condition that was precipitated by the loss of her father.

Ms. Kolnberger's efforts to keep her family together in the wake of her husband's death can be described as nothing less than heroic, as are her efforts to establish a stable income to save her home from foreclosure and be able to afford monthly mortgage payments going forward. Those efforts include continuing in her present employment, taking in tenants to raise rental income and having her live-in mother pledge her social security check to the household income.

2. This loan modification application should not be denied because to deny a loan modification solely for reason of "Investor/Guarantor Not Participating" without further explanation and without demonstration of a good faith effort to seek a waiver of those restrictions is in violation of New York State Supreme Court case law and RESPA Regulations.

The Denial Letter includes a denial of a HAMP Tier 1 Trial Modification, a HAMP Tier 2 Trial Modification and an SPS Trial Modification all for the reason of

---

[1] https://www.justice.gov/opa/pr/deutsche-bank-agrees-pay-72-billion-misleading-investors-its-sale-residential-mortgage-backed

3

# Phillip Mahony, Esq.
### Bankruptcy - Foreclosure – Debt Settlement

---

"Investor/Guarantor Not Participating." No other reasons are given in each case. This is a violation of RESPA Regulations, which require that specific reasons and criteria for denial must be given, and New York State Supreme Court case law, which further requires that reasonable efforts must be made to obtain a waiver from the investor guidelines.

Section 12 CFR 1024.41(d) of the Real Estate Settlement Procedures Act (Regulation X) states:

> "If the servicer denies a loss mitigation application for any trial or permanent loan modification option, the notice provided to the borrower must also state the servicer's specific reason or reasons for denying each trial or permanent loan modification option, and, if applicable, that the borrower was not evaluated on other criteria. Certain disclosures are required when a servicer denies an application for the following reasons or using the following procedures:
> - Investor criteria and use of a waterfall.
>    o If the servicer denies a loan modification option based upon investor criteria, the servicer must identify the owner or assignee of the mortgage loan and the specific criteria that the borrower failed to satisfy." [2]

The Consumer Financial Protection Bureau's official analysis of Section 12 CFR 1024.41(d) states:

> "If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient." [3]

A Kings County Supreme Court decision (*Deutsche Bank Natl. Trust Co. v Izraelov*, 977 N.Y.S.2d 666, Supreme Court Kings County, Sept. 10, 2013) appears to be controlling as to the duties of a servicer when a loan modification is denied because of investor restrictions. This case has been cited and followed in the Eastern District of New York Bankruptcy Court as well.

---

[2] http://files.consumerfinance.gov/f/201503_cfpb_regulation-x-real-estate-settlement-procedures-act.pdf

[3] https://www.consumerfinance.gov/eregulations/sxs/1024-41-d/2013-01248?from_version=2015-18239&fr_page=

# Phillip Mahony, Esq.
### Bankruptcy - Foreclosure – Debt Settlement

---

In arriving at its holding that a servicer's duties do not end with a mere declaration that investor restrictions prohibit a loan modification, the *Izraelov* court cited Special Referee Deborah Goldstein who argued that, despite the investor restrictions, the requirements of HAMP were still applicable.

> "…[I]f a servicer was restricted or prohibited from freely performing or taking the modification step,… documentation should show that it made reasonable efforts to seek a waiver from the applicable investor and whether the requested waiver was approved or denied. (See HAMP, 'Q2301.')"

The Plaintiff countered that "any citation to HAMP provisions…are inapposite [in that] HAMP regulations only apply to HAMP participants of which Plaintiff is not." The court ruled otherwise, however, stating that "whether or not the loan qualifies for HAMP or not, the most appropriate benchmark for good faith are the HAMP guidelines" and "A plaintiff's failure to comply based solely on an assertion that HAMP regulations or guidelines do not apply would, at the least, be material to whether the plaintiff is negotiating in good faith as required by CPLR. 3408(f)."

The court therefore held in favor of the Defendant when it ruled that when investor regulations prohibit loan modifications, the plaintiff is obligated to provide evidence of that restriction and to seek a waiver of those restrictions:

> "At the very least…a plaintiff who contends that it cannot agree to a loan modification or other arrangement that would allow a defendant to stay in his or her home because of an 'investor' prohibition or restriction must provide the court or referee with suitable documentary evidence of the obstacle, and the court or referee may appropriately direct its production. … Assuming the prohibition or restriction to exist…the plaintiff has an obligation to proceed in good faith to obtain, what has been called, a "waiver" of the prohibition or restriction in the particular action. The court or referee may require the plaintiff to provide evidence of compliance, including requiring the documentation described in HAMP's so-called "Q2301."

<u>3. This loan modification application should not be denied and Ms. Kolnberger should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the Denial Letter because the HAMP analysis of the loan was already in progress when the loan was service transferred to the Servicer and it was therefore incumbent on the Servicer to continue that analysis, and it was also incumbent on the Servicer to continue that analysis past the MHA program's termination date of December 30, 2016.</u>

# Phillip Mahony, Esq.
## Bankruptcy - Foreclosure – Debt Settlement

On November 16, 2016, Ms. Kolnberger's loan was transferred from Bank of America, a HAMP participant, to the Servicer. At the time of the transfer, an active HAMP analysis was ongoing. Per MHA regulations, it was incumbent on the Servicer to continue the HAMP analysis begun by Bank of America. Section 1.4.1 of the Making Home Affordable handbook, Version 5.1, dated May 26, 2016 (the "MHA Handbook") [4] ("Transfers of Servicing / Transfer of Eligible Loans") states as follows:

> "When a participating servicer transfers or assigns mortgage loans, or servicing rights relating to mortgage loans, that constitute Eligible Loans pursuant to the SPA, the transferee servicer must assume the transferor's obligations under the SPA with respect to the transferred Eligible Loans. A transferring servicer may not use a transfer to circumvent its existing obligations under the SPA." [5]

Furthermore, that HAMP analysis should have continued even though the HAMP program terminated six weeks after the loan was transferred to the Servicer. Making Home Affordable Supplemental Directive 16-02, "Making Home Affordable Program – MHA Program Termination and Borrower Application Sunset" [6] states that "a borrower who submits an Initial Package [7] on or before [the MHA program termination date of] December 30, 2016 must be evaluated for HAMP, provided that such borrower meets all applicable eligibility criteria set forth in Section 1 of Chapter II."

Ms. Kolnberger met both requirements of Supplemental Directive 16-02. First, she submitted an Initial Package to Bank of America, the original servicer and a HAMP participant, in August of 2016. The HAMP analysis was still underway when the loan was service transferred to the Servicer on November 16, 2016. Second, her loan meets all the applicable eligibility criteria set forth in Section 1 of Chapter II of the MHA Handbook in that (i) her loan is a first lien mortgage loan originated on or before January 1, 2009, (ii) her property had not been condemned, (iii) she has documented a financial hardship, (iv) she has agreed to set up an account for taxes and hazard and flood insurance, (v) the unpaid principal balance for her single family house is less than $729,750, (vi) the mortgage loan is secured by a one-family property and (vii) the borrower submitted an Initial Package on or before December 30, 2016.

---

[4] https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_51.pdf

[5] "SPA" is defined as the Servicer Participation Agreement that participating servicers had to register with the MHA program administrator. Loans that constitute "Eligible Loans" are as defined in that SPA.

[6] https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1602.pdf

[7] "Initial Package" is defined in Chapter 2, Section 4 of the MHA Handbook as (i) the RMA form, (ii) form 4506-T, (iii) evidence of income and (iv) Dodd Frank Certification.

# Phillip Mahony, Esq.
## Bankruptcy - Foreclosure – Debt Settlement

---

4. This loan modification application should not be denied and Ms. Kolnberger should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the Denial Letter because a loan modification analysis under HAMP and SPS programs had been promised during the application process and because the Servicer's conduct in repeatedly requiring updated documents indicated that such an analysis was being conducted.

The Denial Letter stated that Ms. Kolnberger's loan could not be considered for a HAMP Tier 1, HAMP Tier 2 and SPS Trial Modification because the investor did not participate in those programs. The words and the actions of the Servicer during the loan modification analysis period, however, gave every indication that Ms. Kolnberger's loan modification application was being considered for those programs.

Following is a partial record of conversations with and document requests by the Servicer:

- On November 16, 2016, Ms. Kolnberger's mortgage loan was service transferred to the Servicer.

- On November 28, 2016, I had a phone conversation with Ms. Tacarra King of the Servicer. I informed her that we were in the middle of a loan modification analysis with the previous servicer when the loan was service transferred, and I asked her what, if anything, she needed to continue this process. She gave me a list of documents and advised that the loan would be analyzed for a HAMP Tier 1 loan mod, HAMP Tier 2 loan mod, SPS Program modification and a repayment plan. The requested documents were promptly provided.

- On December 21, 2016, I had a phone conversation with Ms. Michele Kiefer of the Servicer who advised me which additional documents were needed for the loan modification analysis, including which documents would be needed in order for 100% of Ms. Kolnberger's mother's social security income to be used as contributory income. These additional documents were promptly provided.

- On January 11, 2017, I had a phone conversation with Mr. Chris Krukowski of the Servicer who informed me that two more bank statements were needed to show rental deposits. These were promptly provided.

- On February 17 or 18 I had another phone conversation with Mr. Krukowski who informed me that additional documents relating to deposit of Mr. Kolnberger's mother's social security check were needed. These were promptly provided.

Again, the words and the actions of the Servicer clearly indicated that Ms. Kolnberger was being considered for a loan modification. To now suddenly reverse course and say she was not, indicates that the Servicer was acting either incompetently or in bad faith throughout the loan modification process, or is doing so now in denying her

# Phillip Mahony, Esq.
## Bankruptcy - Foreclosure – Debt Settlement

those loan modification options. That the Servicer would behave in this manner even as Deutsche Bank was signing off on what has been described as the largest fine ever levied by the Department of Justice [8] - more than half of which was earmarked to assist homeowners in distress - is disturbing.

### Conclusion

In conclusion, the Servicer acted unreasonably when it ignored MHA regulations, RESPA and controlling case law and denied Ms. Kolnberger the very reasonable loan modification that was spelled out in great detail in its Denial Letter. Furthermore, the Servicer acted unreasonably when the only option it provided Ms. Kolnberger to save her home was a repayment plan that they knew she could not afford because they knew exactly what her income was and exactly how much money she had available. I am hopeful that the Servicer will see its way clear to correct these errors and provide Ms. Kolnberger with a loan modification that will enable her to stay in her home.

Thank you for your assistance in this matter. Feel free to contact me with any questions.

Sincerely

*/s/ Phillip Mahony*
Phillip Mahony

---

[8] http://money.cnn.com/2017/01/17/news/economy/deutsche-bank-fine/

# Exhibit D

P.O Box 65260
Salt Lake City, UT 84165
www.spservicing.com



# Fax

| To: | Philip Mahony | From: | Select Portfolio Servicing, Inc. |
|---|---|---|---|
| Fax: | 844-269-2809 | Pages: | |
| Phone: | | Date: | 6/12/17 |
| Re: | | cc: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Customer Service Department
1-800-258-8602
Hours of Operation: Mon. –Thur. 8:00am-11:00pm EST Fri 8:00am-9:00pm EST Sat. 8:00am – 2:00pm EST

# CONFIDENTIALITY NOTE

The information contained in this facsimile transmission is being transmitted to and is intended only for the use of the individual(s) named above. If the reader of this is not the intended recipient, you are hereby advised that any dissemination, distribution or copying of this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone and destroy this transmission.

Jun. 12. 2017 12:39PM                                    No. 7947    P. 2/2



6/12/2017

JOANN KOLNBERGER
108 PARK HILL AVENUE
MASSAPEQUA NY 11758

**Account Number** 

Dear JOANN KOLNBERGER:

Select Portfolio Servicing, Inc. (SPS), as the mortgage servicer on the above referenced account, is in receipt of your recent request for information about the loan. We regret to inform you that we are unable to fulfill your inquiry for the documentation requested.

As an SPS customer, you may register at www.spservicing.com where, based on the status of your mortgage account, you will be able to access your account information. The account information that you may access on our website includes:

- Make your monthly mortgage payment online or sign up for automatic deduction/ACH.
- Update your Contact Information.
- Review or request Payment Histories.
- Submit Evidence of Insurance.
- View your 1098 Year End Tax Information.
- View your monthly mortgage statements.
- Sign up for email reminders and notifications.
- Request a Payoff Quote.
- Complete and submit a Request for Mortgage Assistance form
- Submit supporting documents for Assistance Program review
- Review the status of your Assistance Program review

If you have any questions regarding this correspondence and the enclosed documents, or the servicing of your mortgage loan, please contact our Customer Service Department at (800) 258-8602, Monday through Thursday between the hours of 8:00 am and 11:00 pm, Friday 8:00 am and 9:00 pm, and Saturday 8:00 am and 2:00 pm Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

# Exhibit E





JOANN KOLNBERGER
106 PARK HILL AVENUE
MASSAPEQUA, NY 11758



**SPS** | SELECT
Portfolio
SERVICING, inc.

May 12, 2017

Law Office of Phillip Mahony
Attn: Phillip Mahoney, Esq.
35-37 36ᵗʰ Street
Astoria, NY 11106

**Account Number:**
**Property Address:**  106 Park Hill Avenue
                       Massapequa, NY 11758

Dear Law Office of Phillip Mahony Esq.,

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, has received your inquiry dated April 17, 2017, which we received on April 17, 2017.  In your inquiry you raised question(s) regarding:

• Loss Mitigation Review

SPS, as the mortgage servicer on the above referenced lien, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate your obligation either has been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though you're personal liability on the Note may be discharged or subject to an automatic stay, the terms of the Mortgage remain in effect. The owner of the Mortgage, as lien holder, continues to have a lien on the real property.

We have completed a full review of your inquiry and your account, and our response is below.

**Loss Mitigation Review**

In response to your appeal of the decision notice dated March 31, 2017 (copy enclosed); SPS complies with all relevant state and federal requirements in connection with the servicing of your client's lien. SPS respectfully disagrees with your suggestion that SPS has violated applicable law in regard to reviewing your client's account for loss mitigation.

The account has been assigned a Relationship Manager to assist with the resolution process. Your assigned Relationship Manager, Chris Krukowski, can be reached at 866-820-6216, ext. 37683, or by email at relationship.manager@spservicing.com.

If the Relationship Manager is not available, any of our trained servicing representatives can assist with answers to questions regarding the account. Please contact us toll free at 888-818-6032. Representatives are available Monday through Thursday between the hours of 8:00 a.m. and 11:00 p.m., Friday from 8:00 a.m. to 9:00 p.m., and Saturday from 8:00 a.m. to 2:00pm., Eastern Time.

SPS has reviewed and responded to your inquiry as discussed above.  You may request, and we will provide, at no charge, copies of the documents that we relied on in reaching our determination.  If we cannot provide such documents because they are privileged or proprietary we will advise you.  Please send any such requests to:

Select Portfolio Servicing, Inc.



Attn: Research Documents
P.O. Box 65277
Salt Lake City, UT 84165-0277

We appreciate the opportunity to address the issue(s) noted in your inquiry and consider this matter resolved. Should you have any further questions, please contact me toll-free at 866-878-5178, ext. 50448 between the hours of 8:00 a.m. and 6:00 p.m., Monday through Friday, Eastern Time.

Sincerely,

*Brenda Allen*

Brenda Allen
Customer Advocate

Enclosure(s):        Letter dated March 31, 2017

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámennos al número 800-831-0118 y seleccione/marque la opción 2

This is not an attempt to collect a debt but a response to your request for information.

  
## Right to Appeal

You have the right to appeal any non-approval by providing a written explanation of why you believe our determination was incorrect, along with all supporting evidence, within thirty (30) days of the date of this letter to:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277
Relationship.Manager@SPServicing.com

You have thirty (30) calendar days from the date of this notice to contact SPS to discuss the reason for non-approval. **No foreclosure sale will be conducted and you will not lose your home** during this 30-day period or any longer period required for us to review supplemental material you may provide in response to this notice. If a foreclosure sale has already been scheduled we will instruct our attorney to file a motion to postpone such sale. It is possible however that a court will deny the motion and the sale will proceed. If that happens we will be unable to provide loss mitigation.

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 800-342-3736 or www.dfs.ny.gov.**

## Notice of Error or Information Request

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

## Contact Us

If you have any questions, your assigned Relationship Manager, Chris Krukowski, can be reached toll free at 888-820-6218 Ext. 37683 or by email at Relationship.Manager@SPServicing.com.

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like to speak with a HUD approved counselor, call the Homeowner's HOPE™ Hotline 888-995-HOPE (4673). The Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20552.



You may have entered into a separate advance repayment plan regarding delinquent taxes and insurance. If so, it is possible that the term of that advance repayment plan will extend beyond the term of this Plan, and accordingly, you will continue to make payments under the advance repayment plan as required.

### Questions?

Your assigned Relationship Manager, Chris Krukowski, can be reached toll free at 866-820-6218 Ext. 37683 or by email at Relationship.Manager@SPServicing.com.

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like to speak with a HUD approved counselor, call the Homeowner's HOPE™ Hotline 888-995-HOPE (4673). The Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámenos al numero 800-831-0118 y seleccione/marque la opción 2.

This information is intended for informational purposes only and is not considered an attempt to collect a debt.







**SPS** | SELECT
Portfolio
SERVICING, inc.

March 31, 2017



JOANN KOLNBERGER
106 PARK HILL AVENUE
MASSAPEQUA, NY 11758

Customer Name(s):    JOANN KOLNBERGER
Account Number:
Property Address:    106 PARK HILL AVENUE
MASSAPEQUA, NY 11758

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS has completed its review of your complete Assistance Review Application. Based on the information you have provided, SPS has made a decision, outlined below. Thank you for completing your Assistance Review Application and submitting all required documentation. Please note that the decisions in this letter represent the evaluation of all home retention loss mitigation options available to you, ensuring you receive a fair and complete evaluation. Our reviews are conducted in accordance with applicable laws and investor eligibility rules. SPS is committed to a policy of nondiscrimination in all aspects of its servicing program.

### Loss Mitigation Program Decision

Congratulations! You have qualified for and we are pleased to offer you a Repayment Plan. This program is intended to help you avoid foreclosure or other legal action. Attached you will find the terms and conditions of our approval along with instructions to accept the offer. It is important that you read it carefully and comply with the terms outlined in the agreement. If after reading through the terms and conditions of the offer you find that you are unable to meet the requirements, or you have further questions, please contact SPS.

**This offer must be accepted by April 24, 2017, or we will consider the offer rejected. Please note that if you do not accept this offer by the due date listed above, you may lose your opportunity to participate in these options now and in the future.**

### Non-Home Retention Options

You may also be eligible for non-home retention options. Our approval of these non-home retention options is conditioned upon our receipt of information that may not be in your possession (e.g., appraisal or title search) that is necessary to establish the specifics of the offer. Depending on what the documents show, the specific option may not be available.



**Short Sale.** If you are interested in selling your property but owe more than your home is worth, a short sale may be an option. In a short sale, SPS allows you to sell the mortgaged property and pay off your mortgage account for an amount which is less than the outstanding balance, interest and fees. Approval for this option is conditioned upon receipt of required documentation, investor, and/or mortgage insurer approval, if required, and evaluation of the amount being presented for pay off of the outstanding lien. If you are interested in this option and have a current purchase offer on your home, please contact us immediately. If you are interested in selling your home, but need assistance in finding an experienced real estate agent to assist you, SPS can refer you to an agent in your area. Please contact one of our representatives at the number below for more information.

**Deed in Lieu of Foreclosure.** With a deed in lieu, you agree to transfer the title or ownership of your property to the owner or servicer of your mortgage in order to avoid foreclosure sale and satisfy all or a portion of the mortgage debt. The amount of debt satisfied by this transfer of ownership is based on the approved value of your home. In some cases, you may be responsible for a remaining balance of the mortgage debt over and above the approved value. This option is conditioned upon receipt of required documentation, investor and/or mortgage insurer approval, if required, and the ability to provide title to the property clear of all other liens.

As stated, these options have different requirements and guidelines, and not all accounts will qualify. Moreover, some of these options may offer financial assistance for your relocation. Please contact SPS for more detail.

## Regulatory Notice of Non-Approval

Even though you are approved for a Repayment Plan, federal law requires us to disclose the programs for which you have been reviewed, but not approved, or are otherwise ineligible for review. SPS reviewed your complete Assistance Review Application for eligibility under its loss mitigation options, which are established through investor rules and are based on your individual circumstances. All program(s) below are the program(s) for which you were denied and are specific reason for non-approval. These denials are based on the criteria where your account did not pass the program eligibility requirements; we did not consider other criteria regarding ineligibility as part of our decision.

*   **HAMP Tier 1 Trial Modification**

    **Investor/Guarantor Not Participating.**
    We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has a right of approval and has denied this option based on a business decision.

*   **HAMP Tier 2 Trial Modification**

    **Investor/Guarantor Not Participating.**
    We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has a right of approval and has denied this option based on a business decision.

*   **SPS Trial Modification**

    **Investor/Guarantor Not Participating.**
    We are unable to offer you this program because:
    • We service your mortgage on behalf of an investor or group of investors that has not given us the contractual authority to modify your mortgage. The owner of your mortgage is Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4.

*   **Home Affordable Unemployment Program (HAUP)**

    **Account Delinquency.**
    We are unable to offer you this program based on the delinquency of your account.

*   **SPS Unemployment Program**

    **Account Delinquency.**
    We are unable to offer you this program based on the delinquency of your account.



March 31, 2017

**REPAYMENT PLAN**

Re:  Customer Name(s):  JOANN KOLNBERGER
     Account Number:
     Property Address:  106 PARK HILL AVENUE
                        MASSAPEQUA, NY 11758

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect, and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS is pleased to inform you that you have been approved for a temporary repayment plan to assist you in making payments against the lien on the above-referenced property. The terms of this repayment plan, which are detailed below, include the payment amounts and steps necessary for you to bring your account contractually current.

**Plan Payments**

Your trial Plan payments will take the place of your normal monthly mortgage payments during the term of the Plan. **You must make each of the below-listed payments by or before the listed due dates, or this Plan will be canceled.** Your Plan payments and due dates are as follows:

| Payment | Due Date | Amount |
|---|---|---|
| Payment 1 | 04/24/2017 | $4,304.94 |
| Payment 2 | 05/24/2017 | $4,304.94 |
| Payment 3 | 06/24/2017 | $4,304.94 |
| Payment 4 | 07/24/2017 | $4,304.94 |
| Payment 5 | 08/24/2017 | $4,304.94 |
| Payment 6 | 09/24/2017 | $4,304.94 |
| Payment 7 | 10/24/2017 | $4,304.94 |
| Payment 8 | 11/24/2017 | $4,304.94 |
| Payment 9 | 12/24/2017 | $4,304.94 |
| Payment 10 | 01/24/2018 | $4,304.94 |
| Payment 11 | 02/24/2018 | $4,304.94 |
| Payment 12 | 03/24/2018 | $4,304.94 |
| Balloon Payment | 04/24/2018 | $99,380.78 |



## Form of Payment

You must make your first payment on or before the due date by certified funds. Certified funds include, Western Union Quick Collect (code city Oswald), cashier's check, money order or wire transfer (contact SPS for wire instructions). Subsequent payments must be made on or before the applicable due date and can be made by personal check, EZ pay via telephone or SPS's website, or by certified funds. Please send payments to:

PO Box 65450 Salt Lake City, UT 84165-0450

## Application of Payments

Payments made under this Plan will be applied to amounts due and past due on your account as necessary to bring your account contractually current. Please note that if your taxes or insurance increase during the term of this Plan, you will be required to pay the amount of any such increase in addition to the amounts set forth above. Otherwise, an escrow shortage may result. Funds may be held in a non-interest bearing account until they total an amount that is enough to pay the oldest delinquent monthly payment.

If you receive a payment increase notice due to an adjustable or step rate change, you will need to include the increase in future forbearance payments based on the payment change effective date; otherwise the account may not be current at the end of the plan or the balloon amount may increase.

## Plan Term

This Plan becomes effective as of the date that you have made the First Payment shown above. This Plan will terminate upon SPS receiving the final Balloon payment on or before the final payment due date. Failure to make any of the specified payments in full, by the due date, will also result in the termination of this Plan.

If you are unable to pay the balloon payment before the end of the month in which it is due, please contact us to discuss additional options to resolve the remaining delinquency.

## Forbearance

During the Plan term, SPS will not proceed to foreclosure sale or commence foreclosure proceedings on the above-referenced property, provided that you are making timely payments in compliance with the terms of this Plan. We may commence foreclosure proceedings or commence a sale of the property if you do not comply with the terms and conditions of this Plan.

If you are unable to pay the balloon payment before the end of the month in which it is due, please contact us to discuss additional options to resolve the remaining delinquency.

## Terms Not Modified

All terms and conditions of the current mortgage documents pertaining to this account remain in full force and effect, and you agree to comply with those terms and conditions. However, during the term of the Plan you may make the Plan payment instead of the payment required under your mortgage documents. Nothing in the Plan shall be understood or construed to be a satisfaction or release, in whole or in part, of any obligations under the mortgage documents.

## Delinquent Taxes and Insurance

You agree to pay any and all delinquent property taxes relating to the real property and provide proof of such payment to SPS prior to the date that the final payment is due under this Plan. You also agree to provide proof of hazard insurance coverage (and, where required, proof of flood insurance coverage) for the real property and deliver such proof of insurance to SPS prior to or on the due date of your first payment. If you fail to provide proof of insurance, SPS may, pursuant to applicable law and SPS policies, purchase insurance on the real property, in which case you agree to repay SPS for such insurance.

## SHORT SALE
## ACCEPTANCE FORM

Send this signed form with your Property Listing Agreement (signed by all borrowers) and the enclosed Authorization Form by April 14, 2017 to start the process. You don't need to send a payment at this time. After we receive the documents above, we will contact you with information about the specific details of the sale process.

Send this form and the additional required documents to:

General Mail:
Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277
Fax: 801-270-7833
Email: shortsale@spservicing.com

SPS Account Number ▆▆▆▆

Sign: _____     Date: _____

    JOANN KOLNBERGER

Sign: _____     Date: _____





# SPS | SELECT Portfolio SERVICING, Inc.

## General Third Party Authorization

SPS Account Number: _____

SPS Customer(s) Name: _____

Property Address: _____

_____

Please send this completed authorization to:

**Select Portfolio Servicing, Inc.**
**PO Box 65250**
**Salt Lake City, UT 84185**
or
**Fax: 801-269-4405**

I (we) hereby authorize Select Portfolio Servicing, Inc. (SPS) to release, furnish, and provide any information related to the above-referenced mortgage account to:

Third Party Name: _____

Company Name: _____

Relationship to Customer(s): _____

Phone Number: _____        Fax Number: _____

If the above authorization is a result of a Power of Attorney, Order of Guardianship/Conservatorship, or Administration of an Estate, please attach documentation verifying this authority.

If your authorization is for something *other than a full account disclosure*, please indicate below which limited information you authorize SPS to release, furnish and provide to the above authorized third party:

| | |
|---|---|
| Verification of Mortgage | ☐  Payoff Statement as of Date _____ |
| Payment History | Please indicate the payoff reason: |
| Other _____ | Refinance with other company |
| | Sale of property |

I hereby authorize the above-referenced individual(s) to obtain information regarding my mortgage account identified above. I agree that SPS will not be held responsible in any manner for relying upon or following the authorization and/or instructions I have given herein. I also agree that SPS has no responsibility to verify the identity of my authorized third party, nor will SPS be liable for anything my authorized third party may do with the information they obtain regarding my account. I acknowledge and agree that fees, as allowed by law and my mortgage documents, may be assessed to my account as a result of my authorized third party's request(s).

This authorization is valid for one (1) year from the date of receipt unless otherwise specified here: _____.  If at any time I choose to revoke this authorization, it is my responsibility to notify SPS by calling SPS's Customer Service Department at 800-258-8602.

_____        _____
Customer Signature        Date

_____        _____
Co-Customer Signature        Date

Please allow up to three (3) business days after receipt for this authorization to be uploaded into your account.

**Net Present Value (NPV) Results**
Below are the inputs used in the NPV calculation conducted during our review for the HAMP Trial Modification loss mitigation option.

### NPV Data Input Field Values (HAMP)

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| **I. Customer Information** | | |
| 1. Current Customer Credit Score | This field identifies your credit score as provided by one or more of the three national credit reporting agencies. | 650 |
| 2. Current Co-customer Credit Score | If a co-customer is listed on the mortgage, this field identifies the co-customer's credit score as provided by one or more of the three national credit reporting agencies. | |
| 3. Monthly Gross Income | This field identifies the monthly gross income of all customers on your loan before any payroll deductions or taxes. | $7,047.04 |
| | If the subject property (e.g., the property securing the loan for which the customer is requesting a HAMP modification) is a rental property, the rental income is excluded. | |
| 4. Principal Residence Total Housing Expense | This field only applies if your application for a HAMP modification is for a property that is not your principal residence. | $0.00 |
| | This field identifies the amount of the total monthly housing expense (i.e., principal, interest, taxes, insurance and association fees, if any) for your principal residence, and the principal residence(s) of any co-customer(s). | |
| **II. Property Information** | | |
| 5. Property - State | This field identifies the two letter state code of the property securing the mortgage for which you are applying for a HAMP modification. | NY |
| 6. Property - Zip Code | This field identifies the zip code of the property securing the mortgage for which you are applying for a HAMP modification. | 11758 |
| 7. Property Value | This field identifies the estimated fair market value of the property for which you are applying for a HAMP modification that was used for this analysis. | $466,000.00 |
| 8. Property Valuation Type | This field identifies the method by which the property for which you are applying for a HAMP modification was valued (as noted in Field 6, Property Value): 1 – Automated Valuation Model (AVM) 2 – Exterior Broker Price Opinion (BPO) / Appraisal (as is value) 3 – Interior BPO / Appraisal (as is value) | 2 - Exterior BPO/Appraisal |
| 9. Occupancy | This field uses codes to identify the occupancy of the property for which you are applying for a HAMP modification. The servicer will list owner-occupied properties use a code of 1, 3 or 4 and for nonowner - occupied properties will use a code of 2. | 1 |
| 10. Property - Monthly Gross Rental Income | This field only applies if your application for a HAMP modification is for a property that is not your principal residence. This field identifies the monthly gross rental income from the property for which you are applying for a HAMP modification. | |



| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| **III. Mortgage Information** | | |
| 11. Data Collection Date | This field identifies the date on which the Unpaid Principal Balance and other data used in the NPV analysis was collected by us. | 03/28/2017 |
| 12. Imminent Default Flag | This field indicates your default status as of the Data Collection Date. If you have not missed any payments or less than two payments are due and unpaid by the end of the month in which they are due, you are considered to be in imminent default and the value in this field is "Y". If two or more payments are due and unpaid by the end of the month in which they are due as of the Data Collection Date, the value in this field is "N". | N |
| 13. Investor Code | This field identifies the owner of the mortgage for which you are applying for a HAMP modification.<br>1 – Fannie Mae<br>2 – Freddie Mac<br>3 – Owned by a private investor other than us, your servicer<br>4 – Owned by us, your servicer or an affiliated company<br>5 – Ginnie Mae | 3 – Private |
| 14. Unpaid Principal Balance at Origination | This field identifies the amount of the mortgage for which you are applying for a HAMP modification at the time it was originated (i.e., the amount you borrowed). | $456,000.00 |
| 15. First Payment Date at Origination | This field identifies the date the first payment on the mortgage for which you are applying for a HAMP modification was due after it was originated. | 11/01/2006 |
| 16. Product Before Modification | This field uses codes to identify the type of mortgage you held prior to your most recent application for a HAMP modification:<br>1. Adjustable Rate Mortgage (ARM) and/or Interest Only mortgage loan<br>2. Fixed Rate<br>3. Step Rate<br>4. One Step Variable<br>5. Two Step Variable<br>6. Three Step Variable<br>7. Four Step Variable<br>8. Five Step Variable<br>9. Six Step Variable<br>10. Seven Step Variable<br>11. Eight Step Variable<br>12. Nine Step Variable<br>13. Ten Step Variable<br>14. Eleven Step Variable<br>15. Twelve Step Variable<br>16. Thirteen Step Variable<br>17. Fourteen Step Variable | 1 – ARM |
| 17. Adjustable Rate Mortgage (ARM) Reset Date | This field applies only if the type of mortgage you held prior to your most recent application for a HAMP modification is an Adjustable Rate Mortgage (ARM) loan.<br><br>This field identifies the date on which the next Adjustable Rate Mortgage (ARM) reset was due to occur, as of the Data Collection Date (Field 11). | 06/01/2017 |

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| 18. Next Adjustable Rate Mortgage (ARM) Reset Rate | This field identifies the rate at which your mortgage was expected to change based on when the next reset date (Field 14) is scheduled to occur. Please look to your mortgage loan documentation for information on how your mortgage's rate is recalculated at its reset date.<br><br>If the reset date on your ARM loan is within 120 days of the Data Collection Date, this value in this field is the expected interest rate on your mortgage at the next reset date.<br><br>If the reset date on your ARM loan is more than 120 days from the Data Collection Date, the value in this field is your current interest rate at the time of NPV evaluation. | 4.12500% |
| 19. Unpaid Principal Balance Before Modification | This field identifies the unpaid amount of principal (money you borrowed) on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. It does not include any unpaid interest or other amounts that you may owe. | $462,133.04 |
| 20. Interest Rate Before Modification | This field identifies the interest rate on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information on the interest rate of your mortgage. | 3.50000% |
| 21. Remaining Term (# of Payment Months Remaining) | This field identifies the remaining number of months you have left to pay under the term of the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information on the term of your mortgage. | 235 |
| 22. Principal and Interest Payment Before Modification | This field is the amount of principal and interest you were scheduled to pay each month as of the Data Collection Date.<br><br>A. If your loan had an adjustable rate scheduled to reset within 120 days, this field will reflect the principal and interest payment associated with the new interest rate.<br><br>B. If your loan had an adjustable rate scheduled to reset after 120 days, this field will reflect the current scheduled monthly mortgage payment and the note interest rate in effect at the time of evaluation.<br><br>C. If your mortgage is an Interest Only loan and your loan was in the interest only period, the value in this field is the interest payment that was due each month.<br><br>D. If your mortgage is a negative-amortization loan, the value in this field is the greater of:<br>  a. the principal and interest payment you sent on the most recent payment date; or<br>  b. the minimum payment required on your loan.<br><br>For a loan that defaulted under the HAMP Trial Period Plan, enter the contractual monthly P&I payment as of the Data Collection Date. For a loan that defaulted under the HAMP Tier 1 permanent modification, enter the permanent HAMP Tier 1 modification monthly P&I payment. | $1,347.89 |
| 23. Monthly Real Estate Taxes | This field identifies the monthly cost of your real estate taxes. If your taxes are paid annually this amount will be 1/12th of the annual cost. | $709.22 |



## IV. Proposed Modification Information

The fields below describe the proposed HAMP modification that was calculated by your servicer according to the HAMP program guidelines (subject to investor restrictions) that were used in your Net Present Value (NPV) evaluation.

| Input Data Fields | Explanation | Value used by NPV to determine the HAMP eligibility calculation |
|---|---|---|
| 24. Monthly Hazard and Flood Insurance | This field identifies the monthly cost of your hazard and flood insurance coverage. If your insurance is paid annually this amount will be 1/12th of the annual cost. | $165.50 |
| 25. Homeowners Association Dues | This field identifies your monthly homeowner's or condominium association fee. If your homeowner's or condominium association fee payments are paid annually, this will be 1/12th of the annual cost. If your property has no association fee payments and/or any monthly escrow shortage, this field is blank. | $0.00 |
| 26. Months Past Due | This field identifies the number of mortgage payments you would have had to make in order to make your mortgage current, as of the Data Collection Date. | 30 |
| 27. Mortgage Insurance Coverage Percent | This field identifies the percentage of private mortgage insurance coverage on the mortgage for which you are applying for a HAMP modification. If you do not have private mortgage insurance this field is blank. | 0% |
| 28. Capitalized UPB Amount | This field identifies the capitalized unpaid principal balance amount that includes the outstanding principal, past due interest, escrow advances as of the data collection date. | $529,664.18 |
| 29. NPV Date | This field identifies the initial date that the Net Present Value evaluation was conducted on the mortgage for which you are applying for a HAMP modification. | 03/28/2017 |
| 30. Modification Fees | This field identifies the total amount of costs and fees that would have been paid by the investor (owner) of your loan, if you had been approved for a HAMP modification. It includes expenses such as notary fees, property valuation, credit report and other required fees. | $0.00 |
| 31. Mortgage Insurance Partial Claim Amount of the Proposed HAMP Modification | This field identifies any mortgage insurance payout amount as part of the proposed HAMP modification, which is, at the discretion of your mortgage insurance company. This should be zero if you were not approved for a trial period plan or permanent HAMP modification for reason of ineligible NPV. | $0.00 |
| 32. Unpaid Principal Balance of the Proposed HAMP Tier 1 Modification (or Proposed HAMP Tier 1 Modification of Principal Forbearance (if applicable)) | This field identifies the beginning principal balance on which you would have been required to pay interest if you had received a HAMP Tier 1 modification. It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 33) or proposed principal forgiveness (Field 37). | $432,600.00 |
| 33. Interest Rate of the Proposed HAMP Tier 1 Modification | This field identifies the starting interest rate of the proposed HAMP Tier 1 modified mortgage. This rate is fixed for at least the first 5 years after modification. | 2.00000% |

| Input Data Fields | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|
| 34. Amortization Term of the Proposed HAMP Tier 1 Modification | This field identifies the number of months left to pay the proposed HAMP Tier 1 modified mortgage. | 480 |
| 35. Principal and Interest Payment of the Proposed HAMP Tier 1 Modification | This field identifies the amount of the monthly principal and interest payment on the proposed HAMP Tier 1 modified mortgage. | $1,310.02 |
| 36. Principal Forbearance Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forbear on the proposed HAMP Tier 1 modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | $97,064.18 |
| 37. Principal Forgiveness Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 1 modified mortgage. | $0.00 |
| 38. Unpaid Principal Balance of the Proposed HAMP Tier 2 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance [as of the Data Collection Date] on which you would have been required to pay interest if you had received a HAMP Tier 2 modification.<br><br>It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 43 or the amount calculated by the NPV model under the standard Tier 2 modification) or proposed principal forgiveness (Field 39). | $623,250.00 |
| 39. Principal Forgiveness Amount of the Proposed HAMP Tier 2 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 2 modified mortgage. | $0.00 |
| 40. Investor Override for Tier 2 Modification | This field indicates whether the owner of your mortgage provides for different terms than would be provided under the standard HAMP Tier 2 Modification. If not, the value in this field is "N". If there are terms other than the standard terms, the value in this field is "Y". | N |
| 41. Interest Rate of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different interest rate than would be provided under the standard HAMP Tier 2 Modification.<br><br>This field identifies the interest rate of the proposed HAMP Tier 2 modified mortgage. This rate is fixed. | |
| 42. Amortization Term of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different amortization term than would be provided under the standard HAMP Tier 2 Modification.<br><br>This field identifies the number of months left to pay the proposed HAMP modified mortgage. | |
| 43. Principal Forbearance Amount of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different forbearance amount than would be provided under the standard HAMP Tier 2 Modification.<br><br>This field identifies the amount of principal forborne on the proposed HAMP modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | |

[redacted]

[redacted]

**Net Present Value (NPV) Results**
Below are the inputs used in the NPV calculation conducted during our review for the SPS Trial Modification loss mitigation option.

### NPV Data Input Field Values (SPS)

| Input Data Fields | Explanation | Value used in NPV calculation to determine the eligibility of your mortgage |
|---|---|---|
| **I. Customer Information** | | |
| 1. Current Customer Credit Score | This field identifies your credit score as provided by one or more of the three national credit reporting agencies. | |
| 2. Current Co-customer Credit Score | If a co-customer is listed on the mortgage, this field identifies the co-customer's credit score as provided by one or more of the three national credit reporting agencies. | |
| 3. Monthly Gross Income | This field identifies the monthly gross income of all customers on your mortgage before any payroll deductions or taxes. | |
| **II. Property Information** | | |
| 4. Property Value | This field identifies the estimated fair market value of your property used by us, your servicer for this analysis. | $455,000.00 |
| 5. Property Valuation Type | This field identifies the method by which your property was valued (as noted in Field 6, Property Value).<br><br>1.  Automated Valuation Model (AVM)<br>2.  Exterior Broker Price Opinion (BPO) /Appraisal (as is value)<br>3.  Interior BPO /Appraisal (as is value) | DRVB |



# Exhibit F

# Phillip Mahony, Esq.

Bankruptcy - Foreclosure - Debt Settlement
35-37 36th Street, Astoria NY 11106
Phone: 917-414-6795
Fax: 844-269-2809
mahonylaw@outlook.com
www.mahonylaw.com

_____

To:
Select Portfolio Servicing Inc.
PO Box 65277
Salt Lake City, UT 84165-0277

Subject:
Appeal of Loan Modification Denial
Joann Kolnberger
106 Park Hill Avenue
Massapequa, NY 11758
Account #███████████

June 10, 2017

Greetings,

     In regards to the loan modification application of Ms. Joann Kolnberger, please consider this letter to be an appeal in response to the denial letter received by Ms. Kolnberger from Select Portfolio Servicing Inc. (the "Servicer") on or about May 12, 2017.

     It is the contention of the undersigned that the initial denial of Ms. Kolnberger's loan modification application, as described in the Servicer's letter of March 31, 2017 ("The First Denial" attached here as Exhibit A) was improper on four grounds. These four grounds were detailed and supported in an appeal letter delivered by the undersigned to the Servicer and their attorneys on or about April 17, 2017 ("The First Appeal" attached here as Exhibit B). In response to the First Appeal, the Servicer executed a second denial letter as mentioned in the paragraph above ("The Second Denial" attached hereto as Exhibit C).

     This appeal is based on the fact that the Second Denial did not address and did not rebut any of the four claims raised in our First Appeal. In fact, the Second Denial consists solely of a fairly generic cover letter with the First Denial Letter attached. In other words, the Second Denial did not even make a pretense of addressing the four claims raised in the First Appeal. This appeal now therefore requests that the Servicer either withdraw its denial or else that it responds to the four claims raised in the First Appeal.

# Phillip Mahony, Esq.
### Bankruptcy - Foreclosure – Debt Settlement

This appeal also requests that Ms. Kolnberger be considered for an alternative to a loan modification that she has been made aware of by the Servicer subsequent to the Second Denial. On or about May 23, 2017, Ms. Kolnberger received a letter from the Servicer describing other available options (the "Options Letter", attached hereto as Exhibit D.) Included is a "Payment Deferral" option which is described in these words: "With this program, your account will become contractually current by adding the past due payments to the end of your loan."

Although the letter goes on to say that "there is no guarantee that you will be eligible to receive any...assistance through one of these programs" we respectfully request that an explanation be provided of the reasons why Ms. Kolnberger would not be eligible to receive assistance through the Payment Deferral program, should that be the determination.

In summary, the First Appeal presented four claims as to why the First Denial of Ms. Kolnberger's loan modification was improper. These claims were not addressed in the Second Denial and remain unaddressed. As such, the denial of Ms. Kolnberger's loan modification application remains unsupported and Ms. Kolnberger remains eligible for relief. As stated in the First Appeal, the ultimate relief requested is that Ms. Kolnberger be granted either the loan modification described in detail on pages 5-9 of the First Denial Letter, or one very similar to it. In the alternative, we request that Ms. Kolnberger be granted a payment deferral as described in the Options Letter.

Thank you for your assistance in this matter. Feel free to contact me with any questions.

Sincerely

*/s/ Phillip Mahony*
Phillip Mahony

# Exhibit G



May 23, 2017




JOANN KOLNBERGER
106 PARK HILL AVENUE
MASSAPEQUA, NY 11758


Re:   Account Number:
      Property Address:   106 PARK HILL AVENUE
                          MASSAPEQUA, NY 11758

Dear Customer(s),

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and the enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS identified that you are in default under the terms of your mortgage or deed of trust (security instrument). We realize that you may be experiencing a temporary or permanent hardship that has led to the default and we encourage you to contact us.

We may have options available to help you. These options, which you may qualify for include:

* Loan Modifications: With this program, you could receive permanent changes to certain terms on the account, depending on your circumstances and available program options.
* Payment Deferral: With this program, your account will become contractually current by adding the past due payments to the end of your loan...
* Repayment Plans and Special Forbearances: With this program, you could receive payment options for a limited number of months to give you time to resolve your financial difficulties, or give us time to work together on a more permanent solution.
* Short Sales: With this program, the property is listed for sale at fair market value. If a buyer is identified and the property is sold, the proceeds from the sale are applied toward the account, even if the proceeds are less than the account balance.
* Deeds in Lieu of Foreclosure: With a Deed in Lieu, the title is voluntarily transferred to the owner or servicer of your account in order to avoid a foreclosure and satisfy all or a portion of the mortgage account.
* Short Payoffs: With this program, you provide an approved amount to the owner or servicer of your account to satisfy the account, even if that amount is less than the account balance.

The enclosed brochure describes each of these programs in further detail. As a reminder, you are still obligated to make all future account payments as they come due, even while we are evaluating the types of assistance that may be available to you. Please be advised that there is no guarantee that you will be eligible to receive any (or a particular type of) assistance through one of these programs.

Please contact us at one of the numbers below or logon to our website at www.spservicing.com to start the application process. You may also contact us by mail at:



Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have any questions, your assigned Relationship Manager, Chris Krukowski, can be reached toll free at 866-820-6216 Ext. 37683 or by email at Relationship.Manager@SPServicing.com.

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time. You may also find additional information on our website, www.spservicing.com.

HUD approved home ownership counseling may be available to you. You should call 800-569-4287 or TDD 800-877-8339, or go to HUD's website at www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm to find the HUD-approved housing counseling agency nearest you. You may be eligible for assistance from the Homeownership Preservation Foundation, which may be reached at the Homeowner's HOPE Hotline at 888-995-HOPE (888-995-4673) or at their website, www.995hope.org, or you may seek help from another non-profit foreclosure avoidance agency.

**Servicemembers Civil Relief Act (SCRA)**
SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below. Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

**Notice of Error or Information Request:**

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

We look forward to discussing options that may be available to you to avoid foreclosure.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámenos al número 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

**Servicemembers Civil Relief
Act Notice Disclosure**

**U.S. Department of Housing
and Urban Development Office
of Housing**

OMB Approval 2602-0584
Exp 12/31/2017

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC Sec. 3901 *et seq*.) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the '? sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders.

<div align="center">

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250
Fax: 866-867-3019
Phone: 866-818-8032

</div>

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.






**Let SPS help you explore your options.**

Select Portfolio Servicing, Inc. (SPS) knows that home ownership can be one of the most valuable and rewarding investments an individual or family can make. We also understand that the ongoing costs of monthly mortgage payments, home maintenance, property taxes, and homeowner's insurance may become an overwhelming financial burden. At SPS we seek to provide solutions to our customers to assist them in resolving delinquency and avoiding foreclosure. Based upon your current situation, SPS may be able to provide you a customized solution to help you stay in your home or, if appropriate, guide you through the sale or transfer of your property, allowing you to relocate to more affordable housing and avoid foreclosure.

## LOAN MODIFICATION

SPS's loan modification program aims to preserve home ownership and prevent foreclosure. A modification is designed to bring your loan current and provide you with an affordable monthly payment by modifying the terms of your note.

Changes may include a lower monthly payment, a lower interest rate, a partial deferral or reduction of principal owed on your note, or an extension of your maturity date.

If you request a modification and provide us the necessary financial information, we may be able to offer you a "trial modification." A trial modification is a period where you make the proposed modification payment to ensure that the payment is affordable. If you make all of your trial payments and satisfy all modification criteria, you may qualify for a permanent modification of your note. You will then need to sign a modification agreement, which will permanently change certain terms of your note.

## PAYMENT DEFERRAL

A payment deferral is designed to bring your account current by adding any past due payments to the end of your loan as a non-interest bearing balloon, which will be due at maturity or payoff of the loan.

## REPAYMENT PLANS

Repayment plans either help you bring your mortgage current over a period of time, or allow you to resume regular monthly payments while you seek to sell the property, liquidate other assets, or improve your financial condition. While you are current in making the scheduled payments on a repayment plan, we will not proceed with foreclosure.

## SHORT SALE

If you can no longer afford your property and have tried to sell it only to find that you owe more than the property is currently worth, the owner of your mortgage loan may accept an amount from the sale of your property that is less than the full amount you owe on your loan. In a short sale, you would list and sell the property, in an arm's length transaction, at an approved price with the understanding that the net proceeds from the sale may be less than the total amount due on your loan.

You must document the circumstances of your hardship and allow access to the property to assess its condition and value. Upon the successful completion of a short sale, you may also be eligible to receive financial relocation assistance.

---

### BEWARE OF FORECLOSURE RESCUE FRAUD

You should never:

- Be charged a fee by a third party in exchange for housing counseling services
- Be charged an upfront fee by a third party for services related to the modification of a delinquent loan
- Be pressured by a third party into signing paperwork you do not understand

For more information visit: www.loanscamalert.org.

Remember SPS never charges a fee for loan resolution assistance.



## SHORT PAYOFF

If you are trying to refinance your property as a solution to resolving your financial situation but you are unable to satisfy your existing mortgage balance due to a decline in property value, the owner of your mortgage loan may be willing to accept a payoff amount less than what you owe on your loan. Similar to a short sale, you must provide us access to the property and document your hardship and financial condition.

## DEED IN LIEU OF FORECLOSURE

The owner of your mortgage loan may also be willing to accept title to the property for a full satisfaction of the debt. Any agreement to accept a deed in lieu of foreclosure would require your cooperation in providing access to the property interior, providing clear title to the property, and documenting your hardship and financial condition. We will help you work with other lien holders to pay off and/or release any other liens that may be on the property. Upon the successful completion of a deed in lieu, you may also be eligible to receive financial relocation assistance.

## SERVICEMEMBERS' CIVIL RELIEF ACT (SCRA)

Active servicemembers and veterans of the United States military may be entitled to certain interest rate and foreclosure protections under the SCRA. Please contact SPS for eligibility and application requirements.

Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil), Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and a HUD-certified housing counselor (see below). Servicemembers may call SPS at (888) 818-6032 to be connected to an associate who has been trained on SCRA protections.

## GOVERNMENT COUNSELING / RESOURCES

SPS is committed to exploring home ownership assistance, free of cost, with all of our customers. In addition, home ownership counseling may be available by contacting a HUD-approved counseling agency. You may call (800) 569-4287 or TDD (800) 877-8339 for the housing counseling agency nearest you, or go to their website at: www.hud.gov. You may also be eligible for assistance from the Homeownership Preservation Foundation which you may reach at (888) 995-HOPE (4673). SPS also works with housing counselors through Hope LoanPort® (www.hopeloanportal.org), and with customers through Homeowner ConnectTM (www.homeownerconnect.org)

*If none of the options described in this letter are viable for you, we may have other options to help you avoid foreclosure. Please contact us today.*

Select Portfolio Servicing, Inc.
PO Box 65250
Salt Lake City, Utah 84165-0250
Phone: 888-818-6032
www.spservicing.com

Monday - Thursday / 8:00 a.m. and 11:00 p.m.
Friday / 8:00 a.m. to 9:00 p.m.
Saturday / 8:00 a.m. to 2:00 p.m.
Eastern Time

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al número 800-831-0118 y seleccione/marque la opción 2.

This information is intended for informational purposes only and is not considered an attempt to collect a debt.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

# PRIORITY MAIL ★

$9.55

RECEIVED
JUN 28 2019

FROM:
P MAHONY
21-59 36th ST.
ASTORIA NY 11105

DATE OF DELIVERY SPECIFIED *

USPS TRACKING™ INCLUDED *

INSURANCE INCLUDED *

PICKUP AVAILABLE

* Domestic only

TO:
ALEXANDER PHENGSIAROWN
SHAPIRO DICARO - BARAK
175 MILE CROSSING BLVD
ROCHESTER NY 14624

#10

United States Postal Service®
SIGNATURE CONFIRMATION™

USED INTERNATIONALLY,
CUSTOMS DECLARATION
MEL MAY BE REQUIRED.

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

EP14F July 2013
OD: 12.5 x 9.5

**UNITED STATES POSTAL SERVICE®**

